Charles B. McFARLAND, Plaintiff-Respondent,

v.

UNION FINANCE COMPANY, Defendant-Appellant.

No. 25615.

Kansas City Court of Appeals, Missouri.

June 7, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1971.

George M. Hare, Hare & Truman, Independence, Sherman L. Gibson, Hogsett, Shaffer & Gibson, Kansas City, for defendant-appellant.

Graham, Paden, Welch & Martin, Michael J. Albano, Independence, for plaintiff-respondent.

FLOYD L. SPERRY, Special Commissioner.

Plaintiff sued Union Finance Company, a small loan company, for damages growing out of a suit filed by defendant against plaintiff wherein defendant sought a judgment for $600.00, balance alleged to be due and unpaid on a note executed by plaintiff McFarland as co-signer with one Lonnie Lane. McFarland denied having co-signed

the note. Plaintiff dismissed the suit without prejudice. Plaintiff McFarland then filed this suit, alleging malicious prosecution. Union Finance counterclaimed on the note above mentioned. Trial to a jury resulted in a unanimous verdict in favor of plaintiff, on all counts, in the sum of $250.00 actual damages and $10,000.00 punitive damages. From the resulting judgment, defendant appeals.

Plaintiff was a resident of Jackson County, Missouri. He had been an over-the-road truck driver for many years. Lonnie Lane is his wife's nephew, and, in 1967, he lived at Bolivar, Missouri. He was in need of employment and Lonnie's relatives asked plaintiff if he could help him find employment in the Kansas City area. At plaintiff's invitation, Lonnie and his wife moved into plaintiff's home, while seeking employment. Plaintiff's wife and two younger daughters were, at that time, living in the home of plaintiff's mother who was ill. Eventually, Lonnie secured employment with a lawyer, who officed in the building in which defendant's business was located, and who was an attorney for defendant. He also had some employment with a detective agency operated by the brother-in-law of defendant's office manager, Mr. Spillman.

The evidence was that on December 27, 1967, Lonnie asked Mr. Spillman for a loan. He was told that he would need a co-signer. Lonnie stated that plaintiff would co-sign for him. Spillman made a credit check of plaintiff and found his credit good at the two agencies checked. Spillman prepared a note for $900.00, payable over two and one-half years, ($600.00 was for Lonnie and $300.00 was for interest); Lonnie signed the note and was told by Spillman to have plaintiff execute it and bring it back. Lonnie returned the note bearing his and his wife's signature and, purportedly, that of plaintiff. Lonnie was given a check for $600.00, which he cashed. He paid installments thereon, totaling $330.00 and then became delinquent.

Mr. Spillman did not contact plaintiff prior to issuing the check, but simply accepted as true Lonnie's statement that the note bore plaintiff's signature. On September 13, 1968, defendant first notified plaintiff that he was a co-signer on this note, that payments thereon were in default, and demanded that plaintiff pay. Plaintiff and his wife went promptly to defendant's place of business, examined the note and told defendant's agent that the signature was not his. He signed his name a number of times and furnished said sample signatures to defendant. He also executed an affidavit wherein he denied that the signature was his. Defendant's agent examined the various sample signatures, compared them with the one on the note, and said that "they don't match up". On January 6, 1969, defendant instituted suit against plaintiff. Plaintiff's attorney informed defendant's officers that he had known plaintiff for a long time, that he was of good character, and that he had not signed the note. The trial date was January 31st, and, on that date, or the day before, defendant dismissed the suit without prejudice. This suit followed.

Plaintiff testified to the effect that Lonnie asked him to co-sign a note for him and that he refused to do so because Lonnie's grandfather and uncle had each been compelled to pay notes which they had co-signed for Lonnie. There was testimony by plaintiff and Mrs. McFarland from which the jury could have found that plaintiff suffered humiliation and shame, and damage to his credit standing by reason of having been sued by defendant; and the jury could have believed, from the testimony of Mr. Spillman, that plaintiff's general credit rating, which was good in December, 1967, would not be considered as good by credit and lending agencies, if they had knowledge of the filing of this suit by defendant.

■ Since the verdict in this case was for plaintiff and motion for new trial was overruled, the evidence herein is to be

viewed, on appeal, in the light most favorable to plaintiff; and we will give him the benefit of all reasonable inferences which may be drawn therefrom in his favor. Huffstutler v. Coates, Mo.Sup., 335 S.W.2d 70, 73; Hughes v. Aetna Insurance Co., Mo.Sup., 261 S.W.2d 942, 945.

No point is made that the verdict for actual, or for punitive damages, is excessive. Plaintiff testified to the effect that, when he was served with summons in the suit on the note, he employed counsel for a fee of $250.00. Mr. Spillman testified to the effect that the net worth of defendant was about $3,000,000.00; that plaintiff's credit was good in December, 1967, and that the filing of this suit would adversely affect plaintiff's credit with lending agencies and credit bureaus; that his credit would not, as a result thereof, be as good as it had been.

■ The constitutive elements of an action for malicious prosecution are: (1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation by the present defendant; (3) *its termination in favor of the present plaintiff;* (4) *the absence of probable cause for such proceeding;* (5) *the presence of malice therein;* and (6) damage to plaintiff by reason thereof. Hughes v. Aetna Insurance Co., Mo.Sup., 261 S. W.2d 942, 945; Huffstutler v. Coates, Mo. Sup., 335 S.W.2d 70, 73.

Here, Nos. 1 and 2 clearly appear, as does No. 6. However, defendant contends that, since defendant voluntarily dismissed the suit on the note, *without prejudice,* it cannot be said that the litigation was *terminated* in plaintiff's favor. It is contended, in effect, that, since defendant may, at some future date, even several years from now, again sue plaintiff on this note, it cannot be said that the proceeding was terminated. Plaintiff cites no authority directly so holding. In Restatement of the Law, Torts, Section 674, page 444, it is said that where the action is brought for the wrongful initiation of civil proceedings, plaintiff has the burden of proving that the proceedings were initiated without probable cause to believe that the claim asserted might be held valid; that the proceedings were initiated for a purpose other than that of securing the adjudication of the claim; and, that the proceedings were terminated in his favor. Woods v. Standard Personal Loan Plan, Inc., Mo.App., 420 S.W.2d 380, 384. The necessary elements of this action may be quickly understood by reference to MAI 23.07, to-wit: "First, defendant instigated a judicial proceeding against the plaintiff which terminated in favor of plaintiff, and Second, in so doing defendant acted maliciously and without reasonable grounds, and Third, plaintiff was thereby damaged."

■ In Restatement, Comment on Clause (b) Section 674, page 444, it is said that civil proceedings may be terminated in favor of the person against whom they were brought: (1) by the favorable adjudication of the claim by a competent tribunal, or (2) by the withdrawal of the proceedings by the person bringing them, or (3) by the dismissal of the proceedings because of his failure to prosecute them. In this case, defendant was possessed of all the facts, concerning the authenticity of plaintiff's signature on the note long before it filed the suit. Its agent, who was present in defendant's offices when plaintiff signed his name for comparison with his purported signature on the note, stated that they did not compare satisfactorily. He was in possession of full knowledge of *plaintiff's reputation in the business world,* that it was good. When informed that plaintiff had hired legal counsel, and would defend the suit, defendant dismissed the case. There are not here present facts that indicated any thing other than a clear abandonment of the claim. It would be unreasonable to require that plaintiff be restrained from bringing suit to recoup his damages for years to come, in view of the facts here involved. This suit had terminated favorable to plaintiff. Torts, Section 674, supra, page 445.

Defendant says there is no proof that the original action on the note was instituted for any purpose other than to effect an adjudication of a claim believed by defendant to be fair and just. In Woods v. Standard Personal Loan Co., supra, 420 S. W.2d l. c. 384, the court said: "Defendant did have a note in its possession which bore the signature 'Gladys Woods' but its officers were also cognizant of the fact she denied this was her signature and had in fact made a sworn statement to that effect * * *. Defendant must also be held to know that Mr. Caplan did not see plaintiff sign this note nor did he see her receive any of the additional money paid * * *. Under these circumstances the jury could well find a cautious, reasonable, and prudent person would take other steps to insure the Magistrate Court action was in fact brought against the proper party." The court affirmed that judgment. The facts are strikingly similar to those in this case. Under the facts in evidence, the jury could well have believed that defendant thought plaintiff would pay the claim rather than employ counsel and defend. It is common knowledge that many people have a fear of court procedure and will frequently make settlement of an unjust claim rather than go to trial.

Defendant also contends that plaintiff has failed to prove that the magistrate court proceedings, suit on the note, were initiated without probable cause. In Restatement, Section 665, it is stated that, unless explained, the termination of the proceedings in favor of the accused at the instance of the private prosecutor who initiated them, is evidence of a lack of probable cause. Under Comment on Subsection (1), it is stated that the effect of the above rule is to impose on the defendant the burden of introducing evidence as to the reasons for withdrawing the charge or abandoning the proceedings. "The private prosecutor, knowing the reasons why the charge had been withdrawn, can make this

fact immaterial by showing that his reasons for doing so were such that from them no inference of a lack of probable cause can properly be drawn."

■ The facts in evidence here are quite similar to those shown in Woods v. Standard Personal Loan Plan, Inc., supra, 420 S.W.2d l. c. 384–385. The court said, (384): " 'Probable cause in civil proceedings consists of such facts and circumstances as will warrant a cautious, reasonable and prudent man in the honest belief that his action and the means taken in prosecution of it are just, legal and proper.' * * *". The court pointed out that the note upon which plaintiff in the malicious prosecution case was sued, bore the name "Gladys Woods" but "its officers were also cognizant of the fact she denied this was her signature and had in fact made a sworn statement to that effect which they could have seen had they been inclined to do so * * *. Mr. Caplan did not see plaintiff sign this note nor did he see her receive any of the additional money paid when the note was signed." The court held that the evidence made a submissible case for the jury on the question of probable cause. We hold the above to be authority for our holding that there was substantial evidence of the lack of probable cause for defendant to institute suit against plaintiff on the note sued on in this case.

The above are all of the points presented by appellant as grounds for reversal. We rule them all against appellant's contentions.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by FLOYD L. SPERRY, Special Commissioner, is hereby adopted as the opinion of the Court.

All concur.