Kenneth MYERS, John Miller and Steve Belden, Appellants,

v.

CLAYCO STATE BANK, Respondent.

No. WD 34,749.

Missouri Court of Appeals, Western District.

March 5, 1985.

George H. Barr, Kansas City, for appellants.

Kenneth O. Smith, Sharon K. Weedin, Knipmeyer, McCann, Fish & Smith, Kansas City, for respondent.

Before PRITCHARD, P.J., and SHANGLER and BERREY, JJ.

SHANGLER, Judge.

The plaintiffs Myers, Miller and Belden appeal the dismissal with prejudice of a multicount petition against defendant Clayco State Bank. The motion to dismiss, to which the judgment responds, alleged as grounds: the bar of the compulsory counterclaim rule of procedure; that the pleadings stated no cause of action; and that plaintiffs were not the real parties in interest. It is evident also from the presentations of counsel and from the inquiry of the court antecedent to decision that the judgment adjudicates that the claims asserted in the petition were precluded under compulsory counterclaim Rule 55.32(a) by the summary judgment entered by the circuit court of Platte County against these several plaintiffs [there defendants] and in favor of this defendant Clayco [there plaintiff] in case No., CV180-1684-CC.

There was before the court at the time the motion to dismiss was presented and ruled: the petition of the plaintiff as augmented by exhibits; the documents, pleadings and judgments in the several other litigations relevant to the causes of action the plaintiffs here propose; the affidavits, exhibits and other proofs tendered by the defendant Clayco in support of some motions and in opposition to others; and, all these, intersticed by arguments of counsel asserted as fact and assumed as fact in response—on the motion to dismiss. On appeal, the plaintiffs Myers, Miller and Belden contend that compulsory counterclaim Rule 55.32(a) does not govern the causes of action the petition pleads, that since the allegations otherwise state claims for relief, the petition should be restored. We review these assertions of error in the perspective of the facts, proofs and intendments properly available to the trial court.

The petition the judgment dismisses consummates a train of events begun some years earlier. The plaintiffs were then enterprisers in commercial real estate and conducted business through numerous separate corporations—among them, First Standard Investors, Inc. In December of 1977, the Clayco State Bank loaned the First Standard corporation $250,000 by promissory note and, as a condition of loan, Myers, Miller and Belden each executed a personal guaranty in favor of the Bank for a portion of the total promissory obligation. The payments were made as due until early 1980, when the rise in interest rates impaired profit from the several ventures and caused delinquency in the several obligations. On January 7, 1980, Clayco advised the First Standard corporation and the personal guarantors that the obligations on the note were in default and accelerated, and made demand for immediate payment. The enterprisers Myers, Miller and Belden prepared and submitted to their creditors for consent a plan for orderly liquidation and, thereafter, Clayco [so the petition al-

leges] accepted payments from the enterprisers and informed them "they would agree to the proposed liquidation." [1] Then, on July 9, 1980, during the grace period the proposed moratorium allows the debtor First Standard corporation, the Clayco Bank once again advised First Standard Investors and the personal guarantors that the promissory note was in default and the balance accelerated, and once again made demand on the guarantors for payment.

On July 21, 1980, the Clayco Bank filed suit against the several guarantors. The guarantors Myers and Miller were residents of Missouri, and the Clayco Bank commenced suit against them by attachment in Johnson County, Kansas. The guarantor Belden was a resident of Kansas, and the Clayco Bank commenced suit against him by attachment in Clay County, Missouri. The subject of each suit was the obligation of the promissory note and the claim to recover the amount of the guarantee in default. The guarantor defendants, in each case, entered a general appearance, made answer, and the attachments were dissolved. The attachments [so the petition on review alleges] resulted in the foreclosure and liquidation of numerous properties "in which the appellants [enterprisers Myers, Miller and Belden] had equity." While these suits pended, the Clayco Bank accomplished suit and service against *all three guarantors* and First Standard Investors in Platte County. The defendants Myers, Miller and Belden admitted that they executed the guarantees of the promissory note obligation, and summary judgment was adjudicated in favor of the Clayco State Bank. The judgment in that suit—*Clayco State Bank v. First Standard Investors, Inc., Myers, Miller, Belden and others,* Case No. CV180–1684–CC was entered on May 7, 1981. The separate suits in Johnson County, Kansas and Clay County, Missouri against the several guarantors were thereafter dismissed. Count I—for fraudulent misrepresentation—rested on allegations that the Clayco Bank agreed to the moratorium of the promissory note debt but with the intention not to honor the terms of that proposed liquidation, and instead commenced two suits, in Johnson County, Kansas, and in Clay County, Missouri, to collect the promissory guaranty. Count II—for outrageous conduct—rested on allegations that the deceitful representations of the Clayco Bank lured the guarantors into a sense of false security and were given to enable the Clayco Bank time to bring suits on the note—and that these acts were done solely to harm the guarantors. Count III—abuse of process—rested on allegations that the Clayco Bank initiated two simultaneous litigations to collect the same loan debt, and that the concurrent suits in different courts to collect the same debt was unlawful and perverted and done merely to harm the guarantors. Count IV in prima facie tort—rested on allegations that the Johnson County and Clay County suits were intentionally undertaken to do harm to the guarantors and not only to collect the debt, and that with full knowledge of their precarious financial condition the Clayco Bank attached numerous property interests in order to commence the suits, acts calculated to inflict catastrophic financial injury upon them.

The trial court determined that on the pleadings and other proofs presented, the several causes of action attempted by the petition were compulsory counterclaims in the suit brought by the Clayco Bank on the promissory note guarantees in Platte County, and so were precluded by the summary judgment entered in that litigation, since become final.

*Compulsory counterclaims* Rule 55.-32(a) provides:

---

1. The *Proposed Voluntary Liquidation* appended as part of the petition issues not from First Standard Investors, Inc., but from Great Western Development Corporation and "its affiliates"—presumably, First Standard among them, and was subscribed by "Steven L. Belden, President." The liquidation plan bears no date, but proposes a moratorium on payments due and the grace of a reduced interest rate for a period of one year, to await the liquidation of all assets.

A pleading shall state as a counterclaim any claim which at the time of serving the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action.

The guarantors Myers, Miller and Belden argue that the four counts of the petition are not precluded by the compulsory counterclaims rule because (1) the causes of action do not *arise out of the transaction or occurrence*—the promissory note guarantees, (2) the causes of action were the *subject of another pending action* [in Johnson County, Kansas], and (3) the causes of action were not matured claims when the guarantors as defendants pleaded to the Platte County suit on the guarantees.

■ The guarantors contend first that the claims pleaded in the petition do not arise out of the promissory note transaction, and so are not precluded by the Platte County summary judgment in favor of the Clayco Bank and against the guarantors Myers, Miller and Belden—there as defendants. They argue that in the context of the rule, the promissory note guarantees were the *transaction,* and the only claim which arises from such a transaction is the obligation to pay the guarantees on default. The multiple causes of action the petition alleges, the argument continues, arise out of the wrongful means used by the Clayco Bank to enforce the obligation, and not from the obligation itself. The guarantors cite as precedent Texas decisions [and particularly

*Capetillo v. Burress & Rogers,* 203 S.W.2d 953 (Tex.App.1947) l.c. 957] that suits for wrongful sequestration and for wrongful garnishment are in the nature of abuse of process procured by a party to the suit, and "do not arise out of a transaction or occurrence which is being litigated, but arises out of the wrongful act of a party to the litigation in seeking to enforce rights out of the transaction or occurrence which is the · subject matter of his suit." [2] Whatever the validity of a concept which cleaves the right from the remedy—an accrued claim from its enforcement—to constrict the operation of the compulsory counterclaims rule, the decisions of our state ascribe a more inclusive role to transaction and attribute a more peremptory policy for the rule.

■ The rule compels a pleader to state any *claim* that party has against an adversary which arises out of the *transaction* or occurrence which is the *subject matter* of the adversary claim. The operative terms of the compulsory counterclaims rule have been given authoritative definition in *Cantrell v. City of Caruthersville,* 359 Mo. 282, 221 S.W.2d 471, 474[2–4] (1949): *Transaction* imports a pliable meaning and may encompass a series of occurrences, and depends in application, not so much upon the immediacy of connection, as upon logical relationship. *Claim* [of either the original pleader or of the counterpleader] refers not to the form of the action, but "to the underlying facts combined with the law giving a party *a right to a remedy* of one form or another based on the claim." *Subject matter of the claim* does not equate merely with the cause of action, nor the object of the action, but rather [l.c. 475] describes the composite of "physical facts, *the things real* or per-

---

**2.** *Capetillo,* in any event, rests on *dixit* alone. The reasoned decision of the Texas Court of Civil Appeals in that case initially ruled that the claim for the abuse of process by wrongful sequestration was a compulsory counterclaim in the original suit [l.c. 956]: "We think that by former decisions of our courts, and by their practice prior to the adoption of the new rules, it must now be considered as settled that any injury suffered by a defendant in a sequestra-

tion arose out of or was incident to, or connected with, the cause of action of the plaintiff in sequestration." That decision, however, was simply reversed on rehearing and discarded, all without rationale or principle, to come to the result the guarantors here assert as precedent— that suits for abuse of process procured by a party to the suit do not arise out of the transaction in litigation.

sonal, the money, lands, chattels, *and the like, in relation to which the suit is prosecuted."* [emphasis added] Thus, the term *transaction* extends to include [l.c. 474] "all of the facts and circumstances which constitute the foundation of a claim ... *'all the facts and circumstances out of which the injury complained of arose.'"* [emphasis added] Thus, also, the compulsory counterclaims Rule 55.32(a) is designed to bring into a single litigation all logically related claims on penalty of preclusion of a later assertion of any claim omitted. *Cantrell,* supra, l.c. 474[2–4].

■■■■ Our decisions affirm and reaffirm with emphasis that the *transaction* predicate of the compulsory counterclaims procedure is to be applied "in its broadest sense," to encompass all claims connected by a logical nexus. *State ex rel. J.E. Dunn, Jr. & Associates, Inc. v. Schoenlaub,* 668 S.W.2d 72, 75[8–11] (Mo. banc 1984); *Jewish Hospital of St. Louis v. Gaertner,* 655 S.W.2d 638, 641 (Mo.App.1983). The formulation of the rule does not delimit the scope of compulsory counterclaims [as the guarantors would have it] to only those claims which are of the same nature or seek the same relief [a claim on the promissory note proper—as the guarantors contend], or to claims conditional upon each other [as adversary contentions of injury from the same collision—*State ex rel. Davis v. Moss,* 392 S.W.2d 260 (Mo. banc 1965) ], but extends to include claims logically connected by the composite of facts and circumstances on which the claims rest and out of which the contentions of injury arise. *Harris v. Nola,* 537 S.W.2d 636, 639[3] (Mo.App.1976); *Cantrell,* supra, 221 S.W.2d l.c. 474[2–4]. Thus, *transaction* comprehends claims which rest on circumstances of such obvious congruity as adversary contentions of injury from the same collision [*State ex rel. Davis v. Moss,* supra], or a claim to enjoin a teacher from teaching and a claim for salary—that is, whether or not a contract to teach subsisted [*Brinkmann v. Common School District No. 27,* 255 S.W.2d 770 (Mo. banc 1953) ], and those connected by less immediate, yet logically related occurrences—as

in *Harris v. Nola,* supra; *State ex rel. J.E. Dunn, Jr. v. Schoenlaub,* supra, among others.

These principles and precedents dispel the contention of the guarantors that the promissory note guarantees were the entire *transaction,* and that the Clayco Bank misrepresentation to forbear suit during moratorium, the commencement of suit, and attendant incidents of attachment— which ground the multiple counts of the petition—are merely events only accessory and without logical reference to the Clayco claim on the promissory note guarantees. The argument the guarantors posit [and tender Texas authority to support]—that the enforcement of a claim amounts to a *transaction* separate from the claim—is compatible with neither expounded principle nor with precedent. The *claim* of the Clayco Bank [we note again] refers not merely to the form of the action, "but to the underlying facts combined with the law giving a party *a right to a remedy* of one form or another based on the claim. *Cantrell,* supra, 221 S.W.2d l.c. 474[2–4] [emphasis added]. Transposed to the context of discussion, that is only to say that: " '[a] claim ... consists of a subject matter *upon which a proceeding may be brought by one party against another to obtain whatever relief the one is legally entitled to receive as against the other* under the facts and circumstances upon which he relies.' " *Ford v. American Brake Shoe Co.,* 252 S.W.2d 649, 652[5] (Mo.App.1952) [emphasis added]. Thus, the *transaction* from which the Clayco Bank *claim* arises encompasses not only the right to sue on the promissory note guarantees, but also the suit which gives efficacy—and hence, remedy, to the right. That *transaction,* self-evidently, also gives rise to the claims of the guarantors of injury from the wrongful motive to suit, from the commencement of suit itself, and from the attachments in aid of jurisdiction in the prior Kansas and Clay County actions on the promissory note guarantees. The failure to assert the multiple counts for fraud, outrageous conduct, abuse of process, and prima facie tort as

counterclaims in the Platte County suit—where the guarantors Myers, Miller and Belden were for the first time subjected to the personal jurisdiction of a court as codefendants on the Clayco Bank causes of action on the promissory note guarantees—now bars those claims and the petition which asserts them.

■ The guarantors Meyers, Miller and Belden contend, nevertheless, that the claims for misrepresentation, outrageous conduct, abuse of process and prima facie tort fall within the exception of Rule 55.-32(a): "But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action"—and so were not compulsory counterclaims to the Platte County action, and are not barred from assertion in the petition on review. That exception, paraphrased in terms of the facts presented by the record, reads: the guarantors were not obliged, at the risk of later preclusion, to have stated their claims for misrepresentation [and the other counts] in the Platte County suit if at the time that Clayco Bank petition was served upon the guarantors their claims for misrepresentation [and the others] were the subject of another pendent action. The three guarantors were served with the Clayco Bank suit papers and were thereafter obliged to plead any claim the guarantors had against Clayco Bank. The claims for misrepresentation, outrageous conduct, abuse of process and prima facie tort—all of which rest on the assertions of fraudulent agreement to forbear from suit, initiation of the suits against two fragments of the guarantors [one in Kansas and one in Clay County], and the sequestration of assets by the attachment in aid of jurisdiction—were all in being at the time the obligation befell to plead in the Platte County suit. There was no assertion of claim, however, but only the affirmative defense by Belden [and wife, not a party before us] in the Kansas suit and Myers and Miller in the Clay County suit that "plaintiff [Clayco Bank] is, or should be, estopped from asserting the claims set forth in its petition."

The guarantors acknowledge that at the time Clayco Bank commenced suit against *all the guarantors* on the promissory note in the Platte County action, suit already pended against Myers and Miller in the Kansas court as guarantors on the note and against Belden in Clay County as guarantor, and that those guarantors made answers, but no claim. They contend that despite the absence of any *pleaded* claim against Clayco in the Platte County suit, the *possibility* of statement of claim by amendment remained open until the termination of those suits. They contend, in effect, that as long as the Kansas and Clay County suits were not terminated, the rule did not require their counterclaims in the Platte County suit—and since those suits were not dismissed until *after* the summary judgment in Platte County, they were not obliged to counterclaim while the Platte County suit pended. That syllogism, however, assumes premises the compulsory counterclaims rule does not countenance and which are otherwise alien to its logic. A pleader need not state a counterclaim only *if at the time the action was commenced* [against that pleader—here, the guarantors] *the claim was the subject of a pending action.* The guarantors concede that at the time Clayco commenced suit against them in Platte County, no claim by any of them pended against Clayco in any court. Rule 55.32 required the guarantors to assert the several claims as counterclaims in the Platte County suit, and bars the later assertion. *State ex rel. Davis v. Moss,* 392 S.W.2d 260, 263 (Mo. banc 1965). Were we to assume that, the peremptory cast of the compulsory counterclaims rule notwithstanding, the guarantors retained the option and initiative to amend the respective responsive pleadings in Kansas and Clay County to assert as counterclaims the misrepresentation, outrageous conduct, abuse of process and prima facie tort, even after the Platte County summary judgment, that option was never exercised or that initiative exploited. The two suits were dismissed after the entry of summary judgment in Platte County without state-

ment of any counterclaim against Clayco—and so, those several claims never became "the subject of another pending action" so as to exclude them from the bar of the compulsory counterclaims Rule 55.32(a).

■ The guarantors contend also that the claims for misrepresentation, outrageous conduct, abuse of process and prima facie tort were not mature at the time they were obliged to plead to the Clayco petition in Platte County, and so were not subject to compulsory counterclaims Rule 55.32(a). They argue that until all the litigations were completed—the suits in Kansas, Clay County *and* Platte County—the damages were not capable of ascertainment, and hence the causes of actions were not matured.

■ It is implicit that the compulsory counterclaims rule operates only as to claims of the adversary already matured at the time of service of the pleading of that party is due. *Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 813[2] (Mo.App.1982). A *matured* counterclaim, within the sense of Rule 55.32(a), is a claim which has *accrued* to the pleader: that is to say, when the right to sue arises. In terms of statute of limitations § 516.100, RSMo 1978, a cause of action *accrues* [and so for compulsory counterclaims purposes, *matures*] "when the damage resulting therefrom is sustained and is capable of ascertainment." The resultant damage is sustained and capable of ascertainment " 'whenever it is such that it can be discovered or made known.' " *Chemical Workers Basic Union Local 1744 v. Arnold Savings Bank*, 411 S.W.2d 159, 165 (Mo. banc 1966). In all events, a claim accrues [and limitations begins its course] when a person "has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him." *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 150[4] (Mo.1967).

■ The guarantors do not argue that they did not know they were not aware of the several wrongs [they now seek to redress] at the time they were obliged to plead to the Platte County action, but only that the full extent of the damage was not capable of ascertainment until the three litigations had run their course—and hence those several claims were not yet mature. *Ascertainment,* however, refers to the fact of damage, rather than to the precise amount. *Dixon v. Shafton,* 649 S.W.2d 435, 438 (Mo. banc 1983). The several claims—misrepresentation, outrageous conduct, abuse of process and prima facie tort—*all* rest on allegations of wrong and injury known to the guarantors even before their several duty to plead to the Kansas and Clay County petitions arose, and so *a fortiori* even before their duty to plead to the Platte County suit arose.[3] These claims all rest [to some or other extent] on allegations of a fraudulent agreement by Clayco to a yearlong moratorium and to refrain from suit on the promissory note guarantees, but meant by Clayco to induce the guarantors into a false sense of security, the wrongful initiation of the Kansas and Clay County suits, the attachments in those suits to perfect jurisdiction but motivated by excess and malice to inflict harm on the guarantors, the subsequent collapse of the moratorium agreements of the other creditor subscribers, and resultant catastrophic business losses to the guarantors and their enterprises. Thus, at that early time even before responses to the Kansas and Clay County suits were due, the guarantors had "some notice that [they had] suffered an injury or that another person ha[d] committed a legal wrong which ultimately [might] result in harm to [them]." *Krug v. Sterling Drug, Inc.,* supra, l.c. 150[4]. Thus, also, the *fact* of damage was known to the guarantors, if not the precise extent of injury [*Dixon v. Shafton,* supra, l.c. 438], and the claims they now seek to assert by separate petition, were matured

---

3. The fact of suit in Platte County is alleged throughout the several counts, but only to describe the succession of events, and not as a compounding of any of the wrongs.

counterclaims to the Platte County petition, compulsory but neglected, and so now barred.[4]

■ The guarantors contend finally that the court erred in the refusal to allow their motion to amend the petition, heard concurrently with the motion of the defendant Clayco Bank to dismiss the petition as barred by the compulsory counterclaims Rule 55.32(a). The motion to amend was in response to the alternative Clayco motion to dismiss or for a more definite statement of claim. The guarantors argue that the amended petition was tendered, and should have been allowed, "to clear up any uncertainty." Our opinion assumes that the several claims the petition of the guarantors asserts against Clayco Bank are legally sufficient. The petition as amended and as tendered to the trial court [and now before us in the legal file on appeal] alters no significant fact or sequence of time and so, even if allowed, does not escape the bar of compulsory counterclaims Rule 55.32(a).

The judgment is affirmed.

All concur.

---

4. The original suits by Clayco against the several guarantors were brought in Johnson County, Kansas and Clay County, Missouri on the same day: July 21, 1980. On July 24, 1980—long before any responsive pleading was due by the several guarantor defendants as to either, and *after* the attachments to perfect jurisdiction were served on July 22, 1980, in both suits—the letter of attorney Morgens on behalf of at least the Belden defendants in Clay County warned Clayco that "the methods employed to date with regards to attaching a grossly excessive and in most instances, unrelated series of business properties, shall be attacked with the maximum available legal means. *This could well include suit for tortious and wrongful attachment and/or other related means.*" [emphasis added] Despite this avowal to sue for these excesses already perpetrated on the guarantors and known by them, the answer to each suit filed thereafter [on July 30, 1980. to the Kansas petition, and on August 13, 1980, to the Clay County petition] asserted only the affirmative defense of estoppel.