**Ernest and Florene SHINN, Appellants,**

v.

**BANK OF CROCKER and Bollinger Enterprises, Inc., Respondents.**

**No. 16549.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 31, 1990.

Application for Transfer to Supreme Court Denied Jan. 22, 1991.

Daniel J. Dodson, Keith W. Brunstrom, Roger G. Brown & Associates, Jefferson City, for appellants.

O.J. Taylor, Monte P. Clithero, Taylor, Stafford, Woody, Cowherd & Clithero, Springfield, for respondent Bollinger Enterprises, Inc.

Tyce S. Smith, Sr., Smith and Dunbar, Waynesville, for respondent Bank of Crocker.

CROW, Judge.

Ernest Shinn and Florene Shinn filed a two-count petition against Bank of Crocker ("Bank") and Bollinger Enterprises, Inc. ("Bollinger"). The Shinns characterize Count I as a cause of action for malicious prosecution and Count II as a cause of action for willful infliction of emotional distress.

Bank filed a motion to dismiss asserting both counts were barred by the two-year limitation of § 516.140, RSMo 1986. Bank's motion also stated both counts were barred by Rule 55.32(a)[1] in that the Shinns failed to assert such claims in an earlier action against them by Bollinger arising out of the transaction or occurrence that was the subject matter of such claims.

1. Rule references are to Missouri Rules of Civil Procedure (20th ed. 1989) except where other-

Bollinger filed a motion to dismiss asserting both counts were barred by § 516.140, RSMo 1986.

In ruling on the motions to dismiss the trial court, by agreement of all parties, took judicial notice of court records in three cases. Those cases are identified *infra.* The trial court ultimately entered judgment dismissing the Shinns' petition with prejudice. The trial court found both counts were barred by § 516.140 and Count II was also barred by the compulsory counterclaim provision of Rule 55.32.

The Shinns appeal.

■ As the trial court considered matters outside the pleadings, we treat the motions to dismiss as motions for summary judgment. *Black Leaf Products Co. v. Chemsico, Inc.,* 678 S.W.2d 827, 829[1] (Mo.App.1984); *Bohrmann v. Schremp,* 666 S.W.2d 30, 32[7] (Mo.App.1984). We gather the facts from (1) those asserted in the Shinns' brief and conceded to be true in the briefs of Bank and Bollinger, *Tittsworth v. Chaffin,* 741 S.W.2d 314, 315[1] (Mo.App.1987); *Hempe v. Cape,* 702 S.W.2d 152, 153[1] (Mo.App.1985), and (2) the court records judicially noticed by the trial court.

On June 12, 1985, the Shinns (husband and wife) signed a $2,320.21 promissory note and security agreement in favor of Bank. Security was a 1979 Dodge motor home. Bollinger was a guarantor on the note.

On May 1, 1986, a vice president of Bank signed and swore to two complaints in the Associate Circuit Judge Division of the Circuit Court of Camden County. One was against Ernest Shinn, the other against Florene Shinn. The averments of each were identical, i.e., that on or about December 6, 1985, at Camden County, the named accused, with purpose to defraud, removed property subject to a security interest, to wit: the 1979 Dodge motor home, on which the amount remaining to be paid on the

wise indicated.

secured debt, including interest, was at least $500.

On May 29, 1986, the Prosecuting Attorney of Camden County filed a complaint against Ernest Shinn in the Associate Circuit Judge Division of the Circuit Court of Camden County charging Ernest Shinn with the class D felony of defrauding secured creditors in violation of § 570.180, RSMo 1986. The complaint alleged that on or about December 6, 1985, in Camden County, Ernest Shinn, with purpose to defraud, removed property subject to a security interest, to wit: the motor home, on which the amount remaining to be paid on the secured debt, including interest, was at least $500. The complaint was assigned case number CR286–1048F.

Simultaneously with the filing of the complaint against Ernest Shinn the same prosecutor filed an identical complaint against Florene Shinn in the same court. It was assigned case number CR286–1047F.

The docket sheet in CR286–1048F bears two entries dated "11/18/86." The first is: "Dismissal filed." The second is: "Warrant Recalled." That same day the Prosecuting Attorney of Camden County filed a document styled "Dismissal" in CR286–1048F. It read:

> "Comes now the Prosecuting Attorney for the County of Camden, State of Missouri, and dismisses the above captioned matter without prejudice."

The docket sheet in CR286–1047F bears entries dated "11/18/86" identical to the two in CR286–1048F. The case file in CR286–1047F likewise contains a "Dismissal" identical to the one in CR286–1048F.

On November 21, 1986, Ernest Shinn paid $29 costs in CR286–1048F. That same day Florene Shinn paid $29 costs in CR286–1047F.

On December 1, 1986, Bollinger filed a petition against the Shinns in the Circuit Court of Camden County. The suit was assigned case number CV186–561CC. No copy of the petition has been supplied us.

The docket sheet in CR286–1048F bears an entry dated "12/2/86" stating: "Case dismissed by State." The docket sheet in CR286–1047F bears an identical entry.

On September 22, 1988, with leave of court, Bollinger filed a first amended petition against the Shinns in CV186–561CC. The first amended petition contained three counts. Count I was based on the $2,320.21 note of June 12, 1985, to Bank, signed by the Shinns and guaranteed by Bollinger. Count I averred the Shinns defaulted on the note, that Bollinger had paid the note plus interest and "late charges," and that Bollinger was now the holder of the note. Count I prayed for judgment against the Shinns for the amount paid on the note by Bollinger, together with a reasonable attorney fee. Count II was based on another promissory note allegedly executed by the Shinns to Bank and guaranteed by Bollinger. Count III was a claim against Florene Shinn alone, based on an alleged fraudulent misrepresentation regarding a tract of real estate.

On October 31, 1988, Bollinger filed a motion for summary judgment on all three counts of its first amended petition in CV186–561CC.

On December 13, 1988, the trial court made a docket entry in CV186–561CC sustaining Bollinger's motion for summary judgment on all three counts of its first amended petition.

On March 1, 1989, the trial court signed and filed a formal "Summary Judgment" in favor of Bollinger on all three counts of its first amended petition in CV186–561CC. The docket sheet does not show any notice of appeal from that judgment.

The Shinns commenced the instant action April 10, 1989. As reported in the first paragraph of this opinion, Count I of their two-count petition is a claim for malicious prosecution. That count avers, *inter alia,* that (a) agents of Bank and Bollinger made representations to the Prosecuting Attorney of Camden County which resulted in the filing of cases CR286–1047F and CR286–1048F, (b) said representations were false and omitted material facts, (c) in making said representations the agents of Bank and Bollinger acted willfully, maliciously and without reasonable grounds,

and (d) both criminal cases were dismissed and the statute of limitations on the criminal actions had run. Count I seeks actual and punitive damages.

Count II of the Shinns' petition incorporates the allegations of Count I and adds that the natural and probable consequence of the acts of Bank and Bollinger was the infliction of emotional distress and mental suffering on the Shinns, that the Shinns have undergone such anguish, that such condition is medically diagnosable and medically significant, that the Shinns have obtained medical services for such condition, and that they will be required to do so in the future. Count II, like Count I, seeks actual and punitive damages.

The Shinns' brief presents four points relied on. The first is:

"The trial court erred in dismissing Count I of plaintiffs' petition on the grounds that it was barred by the statute of limitations established by § 516.140, because a dismissal without prejudice does not constitute a final favorable termination in favor of plaintiffs for purposes of commencing the statute of limitations period."

Section 516.140, RSMo 1986, referred to in the above point, provides:

"**What actions within two years.—** Within two years: An action for ... malicious prosecution...."

The Shinns direct us to *Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo. banc 1984), which sets forth the elements of a cause of action for malicious prosecution:

"A person suing on a theory of malicious prosecution must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged." *Id.* at 807[1].

The Shinns assert the key issue regarding dismissal of Count I of their petition is whether the dismissal of cases CR286–1047F and CR286–1048F constituted a termination of those proceedings in their favor within the meaning of element "3" above, so as to trigger the running of the two year limitation of § 516.140.

As reported earlier, the prosecutor's "Dismissal" was filed in each of those cases November 18, 1986. An entry in each case dated December 2, 1986, stated: "Case dismissed by State." The Shinns' petition in the instant case was not filed until April 10, 1989. That date was more than two years after each of the first two dates in this paragraph.

The Shinns maintain, however, that inasmuch as the felony charges against them were dismissed without prejudice, the prosecutor could have refiled the charges anytime prior to expiration of the period of limitation for such prosecutions. That period, say the Shinns, was three years. § 556.036.2(1), RSMo 1986. Therefore, argue the Shinns, as the criminal charges against them were based on conduct that allegedly occurred December 6, 1985, the charges could have been refiled anytime up to December 6, 1988. § 556.036.4. Consequently, say the Shinns, the two-year limitation on their action for malicious prosecution did not commence running until the latter date.

If the Shinns' analysis is correct, their petition in the instant case (filed April 10, 1989) was obviously within the two-year limitation of § 516.140.

Bank and Bollinger direct us to *Euge v. Lemay Bank & Trust Co.*, 386 S.W.2d 398 (Mo.1965). There the plaintiff attempted to assert a cause of action for malicious prosecution. His petition, however, alleged the criminal case on which the malicious prosecution action was based was still pending. The Supreme Court of Missouri held the statute of limitations for malicious prosecution would commence running against the plaintiff only upon termination of the criminal proceeding. *Id.* 399[6].

Bank and Bollinger argue *Euge* means the period of limitation on malicious prosecution in the instant case began running when the prosecutor dismissed the charges

against the Shinns. We observe, however, that *Euge* did not decide whether dismissal of the criminal charge without prejudice would constitute a "termination" of that proceeding which would support a malicious prosecution claim. There are, however, cases addressing that subject.

In *Higgins v. Knickmeyer–Fleer Realty & Investment Co.*, 335 Mo. 1010, 74 S.W.2d 805 (1934), a malicious prosecution claim was based on the filing of a criminal charge. The charge was dismissed by the prosecutor before trial. The Supreme Court of Missouri noted one element of a malicious prosecution claim is termination of the underlying case in favor of the malicious prosecution claimant. The Court held this requirement was met by the dismissal of the criminal charge. 74 S.W.2d at 812.

In *Cooper v. Associated Laundries, Inc.*, 83 S.W.2d 591 (Mo.App.1935), a malicious prosecution claim was based on the filing of a criminal charge. The charge was dismissed by the prosecutor prior to preliminary hearing. The defendants in the malicious prosecution action argued the petition was insufficient in that it failed to allege "such a termination of the criminal case as to justify a suit for malicious prosecution." The Kansas City Court of Appeals held the dismissal of the criminal charge "was the end of that proceeding." *Id.* at 592. The opinion explained that dismissal signifies the final end of a suit, not a final judgment on the controversy. Consequently, the petition was sufficient. *Id.*

In *La Chance v. National Pigments & Chemical Co.*, 104 S.W.2d 693 (Mo.App. 1937), a malicious prosecution claim was based on the filing of a criminal charge. The accused was convicted in a trial before a justice of the peace, but appealed to the circuit court where the prosecutor ultimately dismissed the charge. The appellate court held this constituted termination of the criminal case in the accused's favor for the purpose of his malicious prosecution claim. *Id.* at 698[2].

In *Palermo v. Cottom*, 525 S.W.2d 758 (Mo.App.1975), a malicious prosecution claim was based on the filing of a criminal charge. The criminal case ended in a mis-

trial when the jury failed to reach a verdict. The prosecutor later dismissed the charge. This was held sufficient to establish termination of the criminal prosecution in favor of the malicious prosecution claimant. *Id.* at 764[14].

In *Turman v. Schneider Bailey, Inc.*, 768 S.W.2d 108 (Mo.App.1988), a malicious prosecution claim was based on the filing of a replevin suit. That suit was dismissed because the amount in dispute exceeded the judge's jurisdiction. This was held to be a favorable result sufficient to support an action for malicious prosecution. *Id.* at 113[11]. The opinion noted that three months passed between dismissal of the replevin suit and filing of the malicious prosecution action, and that the circumstances indicated "no real possibility" that the replevin suit would be refiled. *Id.*

The five cases last discussed indicate the Shinns could have filed their malicious prosecution claim against Bank and Bollinger as soon as the prosecutor dismissed the charges, without waiting for the statute of limitations to run on the alleged criminal conduct. There are, however, cases suggesting otherwise.

In *Stix & Co., Inc. v. First Missouri Bank & Trust Co.*, 564 S.W.2d 67, 70 (Mo. App.1978), we are told:

"Termination in favor of the party bringing the action for malicious prosecution means the final disposition of the cause forming the basis of the action in favor of the party against whom the original action was brought and adversely to the party bringing the original action. Termination may be effected by final judgment on the merits, dismissal of a cause by the court with prejudice and by abandonment of the action. *McFarland v. Union Finance Co.*, 471 S.W.2d 497, 499[3] (Mo.App.1971). Where an action has been dismissed but the party asserting the claim intends to continue to assert the claim the action has not been disposed of adversely to the party asserting the claim."

In *Ruzicka v. Universal Printing Co.*, 637 S.W.2d 834 (Mo.App.1982), the plaintiff in a malicious prosecution action asserted

the defendants had maliciously prosecuted a suit against him for breach of a labor agreement. He relied on a dismissal of the latter case without prejudice to show termination of it in his favor. However, the defendants did not abandon the labor agreement case, but immediately filed a new petition after the dismissal. The trial court dismissed the malicious prosecution action, and this ruling was upheld on appeal on the ground that the plaintiff could not establish the third element of a cause of action for malicious prosecution, i.e., favorable termination of the labor agreement suit. *Id.* at 835–36.

In *Zahorsky v. Barr, Glynn and Morris, P.C.,* 693 S.W.2d 839, 842 (Mo.App.1985),[2] the Western District of this Court said:

"The general rule is that a dismissal without prejudice does not terminate the case in favor of the defendant absent proof that the dismissal is coupled with the intent of the plaintiff to abandon the claim. This follows because a dismissal without prejudice does not alone conclude the cause with finality."

As authority for the above proposition the opinion cited *Stix,* 564 S.W.2d at 70.

However, in *McFarland v. Union Finance Co.,* 471 S.W.2d 497 (Mo.App.1971), the dismissal of a civil suit without prejudice was held to be a termination in favor of the defendant which would support a malicious prosecution claim. In that case a finance company demanded the alleged co-signer of a note pay it. The latter informed the finance company his purported signature was a forgery. The finance company nonetheless sued him. He hired a lawyer and prepared for trial. The finance company dismissed the suit without prejudice. The alleged co-signer thereupon sued the finance company for malicious prosecution. The finance company contended that because it dismissed the note suit without prejudice, that litigation was not terminated in the co-signer's favor inasmuch as the finance company could still sue him on the note. The appellate court rejected that ar-

gument, finding that the facts indicated a clear abandonment of the note claim by the finance company. *Id.* at 499. The opinion added:

"It would be unreasonable to require that plaintiff be restrained from bringing suit to recoup his damages for years to come, in view of the facts here involved. This suit had terminated favorable to plaintiff." *Id.*

■ We glean from the cases heretofore discussed that when a case is dismissed without prejudice the dismissal constitutes a termination in favor of the defendant—for the purpose of a subsequent malicious prosecution suit by him—only where the party who initiated the case manifests an intent to abandon it. Absent that showing, a dismissal without prejudice does not constitute a termination of the case in favor of the defendant.

■ We must therefore determine whether the records before the trial court demonstrated an intent by the prosecutor to abandon the criminal prosecutions against the Shinns.

It will be recalled that the "Dismissal" document filed by the prosecutor in each criminal case November 18, 1986, specified the dismissal was without prejudice. Three days thereafter the Shinns paid the costs. On December 2, 1986, there was a docket entry in each case stating: "Case dismissed by State." That entry did not specify the dismissals were without prejudice.

It is inferable from these circumstances that the dismissals on November 18, 1986, were the result of an agreement whereby the Shinns would pay the costs and the prosecutor would cease prosecution. Absent such an agreement there would have been no inducement for the Shinns to pay the costs three days after the dismissals. It is likewise inferable that the prosecutor specified the initial dismissals were without prejudice so he could refile the charges if the Shinns reneged on paying the costs. Once the costs were paid, the second dis-

**2.** A holding in *Zahorsky* on an unrelated point was overruled by *Ritterbusch v. Holt,* 789 S.W.2d 491, 494 (Mo. banc 1990).

missals, as we have seen, had no proviso that they were without prejudice.

These circumstances, coupled with the cessation of prosecution after December 2, 1986, are sufficient to support a finding by the trial court that the prosecutor abandoned the criminal charges against the Shinns. Abandonment, as explained in *McFarland*, 471 S.W.2d at 499, and *Turman*, 768 S.W.2d at 113, constitutes a termination in favor of the defendant which will support a malicious prosecution claim by him.

The position championed by the Shinns, i.e., that their malicious prosecution claims did not accrue until the statute of limitations ran on the criminal prosecutions, would wreak havoc in some situations.

For example, there is no time limitation on commencement of a prosecution for murder or any class A felony. § 556.036.1, RSMo 1986. If a person were wrongly charged with such a crime and the charge was dismissed without prejudice, the Shinns' position would make it impossible for the accused to sue for malicious prosecution, as he would never be able to plead and prove termination of the criminal case in his favor.

Certain types of civil actions have a ten-year statute of limitations. §§ 516.010 and 516.110, RSMo 1986. If such an action were brought against someone at the beginning of the limitation period and promptly dismissed without prejudice, the Shinns' position would require such person to wait over nine years to file a malicious prosecution suit.

We decline to adopt such a rule.

■ A cause of action for malicious prosecution accrues when the litigation complained of is terminated in favor of the defendant. *Schnabel v. Taft Broadcasting Co., Inc.*, 525 S.W.2d 819, 826 (Mo.App. 1975). We hold that the criminal prosecutions against the Shinns terminated in their favor no later than December 2, 1986, the date of the entries: "Case dismissed by State." It is unnecessary to decide whether those cases terminated any earlier, as more than two years passed between December 2, 1986, and the date the Shinns commenced the instant action, April 10, 1989. Count I of their petition is therefore barred by § 516.140, RSMo 1986.

There is a second reason the trial court was correct in dismissing Count I.

In *Schumer v. Craig Distributing Co.*, 745 S.W.2d 163 (Mo.App.1987), the drawer of a check was charged with the felony of passing a bad check. The prosecutor ultimately dismissed the charge on payment of costs by the drawer. The drawer then filed a malicious prosecution suit against the party who had complained about the check to the prosecutor. The Eastern District of this Court held the termination of the criminal prosecution upon payment of costs by the drawer and dismissal of the charge was not a termination favorable to him for the purpose of a malicious prosecution action. *Id.* at 165[4]. The Eastern District rejected the drawer's argument that payment of costs was not a condition of dismissal and that the charge would have been dismissed whether or not the costs were paid. The opinion stated:

"The fact remains that [the drawer] ended the prosecution by paying the court costs, thereby compromising the criminal charges against him." *Id.*

In support of its holding in *Schumer* the court cited *McKinney v. Soetebier's Inc.*, 620 S.W.2d 18 (Mo.App.1981). There a check passed at a store was returned by the drawee marked "Credit Exhausted." The store complained to a municipal prosecutor. He charged the drawer with violating a municipal ordinance. Before trial the prosecutor told the drawer the prosecution would be dropped if she paid the store the amount of the check and paid court costs. The drawer did so. The prosecution was dismissed. The drawer thereafter sued the store for malicious prosecution. The Eastern District of this Court held:

"The termination of the insufficient funds check prosecution upon payment of costs by [the drawer] and dismissal of the charge is not a termination favorable to [the drawer] for purposes of a malicious prosecution action. . . .

[The drawer's] evidence did not establish her case because she did not prove a favorable termination of the insufficient funds prosecution. The failure of proof of this essential element is fatal to her cause of action. . . .

[The drawer] agreed without any objection to pay the court costs upon dismissal of the charges. She sought out the prosecutor and arranged for the compromise. A termination of a prosecution which has been brought about by the defendant, or by compromise and settlement, will not support an action for malicious prosecution. . . . [The drawer] may not have been aware of the legal effect of her action in procuring the dismissal of the charges, but the legal effect nonetheless exists, and dooms [her] claims for damages for malicious prosecution." *Id.* at 19–20[2].

■ Applying *Schumer* and *McKinney,* we hold the Shinns' payment of costs in the criminal cases against them nullified any malicious prosecution claim they might have had against Bank and Bollinger.

The Shinns' second point is:

"The trial court erred in dismissing Count II of plaintiffs' petition on the grounds that it was a compulsory counterclaim in a previous action."

■ The "previous action" referred to in the above point is CV186–561CC brought by Bollinger against the Shinns December 1, 1986. That action, it will be recalled, ended in summary judgment for Bollinger on all three counts of its first amended petition. As noted earlier in this opinion, Count I of that petition sought judgment against the Shinns for the amount expended by Bollinger in discharging its liability to Bank as guarantor of the Shinns' note of June 12, 1985, secured by the 1979 Dodge motor home (the one the Shinns were charged with removing in CR286–1047F and CR286–1048F), together with attorney fees. Count I of Bollinger's first amended petition pled the motor home had been sold and the proceeds applied toward the balance due Bank on the note described in Count II of that petition. That note was also signed by the Shinns, payable to Bank, and guaranteed by Bollinger.

Rule 55.32 provides:

"**(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . ."

The first issue we must decide is whether Count II of the Shinns' petition arose "out of the transaction or occurrence" that was the subject matter of one or more of Bollinger's claims against the Shinns in CV186–561CC.

The most instructive case on that question is *Myers v. Clayco State Bank,* 687 S.W.2d 256 (Mo.App.1985). There three individuals personally guaranteed a corporation's note to a bank. The bank brought suit on the note against two guarantors by attachment in Johnson County, Kansas, and against the third guarantor by attachment in Clay County, Missouri. The attachments allegedly resulted in foreclosure and liquidation of numerous properties in which the guarantors had equity. While these suits were pending the bank filed suit against the guarantors and the corporation in Platte County, Missouri, obtaining service on all four defendants there. The guarantors admitted the obligation, and the bank obtained judgment against them in the Platte County suit. The separate suits instituted by attachment were thereafter dismissed. The guarantors then sued the bank, asserting four claims. One count was for fraudulent misrepresentation; it alleged the bank agreed to a moratorium on the note but had no intention of honoring a proposed liquidation plan and instead commenced the two attachment suits. The second count was for outrageous conduct, i.e., that misrepresentations by the bank lured the guarantors into a sense of false security and were made to allow the bank time to bring suits on the note, such acts being done solely to harm the guarantors.

The third count was for abuse of process; it alleged the bank initiated two simultaneous litigations to collect the same debt and that the concurrent suits were brought merely to harm the guarantors. The fourth count was for prima facie tort, i.e., that the attachment suits were intentionally undertaken to harm the guarantors, not merely to collect the debt, and that with full knowledge of the guarantors' precarious financial condition the bank attached numerous property interests intending to inflict catastrophic financial injury on the guarantors.

The trial court in *Myers* ruled the claims asserted by the guarantors were compulsory counterclaims in the Platte County suit, hence they were precluded by the final judgment in that case. In a scholarly analysis of Rule 55.32(a) the Western District of this Court affirmed, holding that the transaction from which the bank's claim against the guarantors arose encompassed not only the right of the bank to sue on the guarantees but also the suit itself, which provided the remedy for the right. *Id.* at 261. That same transaction gave rise to the guarantors' claims of injury. *Id.* Consequently, the guarantors' failure to assert their claims as counterclaims in the Platte County suit (where the guarantors were first subjected to personal jurisdiction on the note guarantees) barred such claims in the subsequent suit. *Id.* at 261–62.

While *Myers* is not factually identical to the instant case, it is similar enough to be controlling.

In *Myers* the bank sued the guarantors on a note. Here the guarantor of two notes (Bollinger) sued the makers (Shinns) for the amount Bollinger had to pay the payee (Bank).

In *Myers* the acts of the bank for which the guarantors sought damages were misrepresentations about the moratorium on the note and the liquidation plan, misrepresentations for the purpose of luring the guarantors into a sense of false security and giving the bank time to sue to collect the note, commencing two simultaneous suits to collect the same note, and attach-

ing properties for the purpose of inflicting catastrophic financial injury on the guarantors. Here the conduct of Bank and Bollinger for which the Shinns seek recovery in Count II is the making of alleged misrepresentations that induced the prosecutor to file criminal charges in CR286–1047F and CR286–1048F, resulting in emotional distress to the Shinns. The subject matter of the criminal charges was the Shinns' alleged removal of the motor home securing the notes upon which Bollinger sought recovery from the Shinns in CV186–561CC. Bollinger's first amended petition in that case pled the motor home had been sold and the proceeds applied on the note that was the subject of Count II of that petition.

If, as held in *Myers*, the conduct of the bank for which the guarantors sought recovery arose out of the transaction or occurrence that was the subject matter of the bank's claim against the guarantors, the same is true with respect to the conduct of Bank and Bollinger for which the Shinns seek recovery in Count II. That claim had obviously accrued at the time the Shinns served their answer in CV186–561CC (July 10, 1987).

Bank, however, was not a party to CV186–561CC. The parties to that suit were Bollinger and the Shinns. We must therefore decide whether Rule 55.32(a) bars Count II of the Shinns' petition against both Bank and Bollinger.

In *Barclay Investment Corp. v. Lamkin*, 408 S.W.2d 168 (Mo.App.1966), a lessee of an apartment sued his landlord seeking money damages and a judgment freeing him from the lease. The landlord subsequently filed a separate suit against the lessee and the latter's wife. The landlord sought accrued rent and attorney fees from the lessee. As to the lessee's wife the landlord prayed that if it recovered against the lessee, execution be issued against the wife's separate property. The trial court dismissed the landlord's suit on the ground it violated the compulsory counterclaim rule (then Rule 55.45(a)). The appellate court affirmed, noting that all claims arose out of the lease. The opinion pointed out the trial court in the first suit

could obtain jurisdiction over the lessee's wife. *Id.* at 170. The appellate court rejected the landlord's argument that it could not be compelled to bring the lessee's wife into the first suit for the purpose of asserting the landlord's counterclaim. *Id.* The appellate court concluded that the landlord's claims were the proper subjects of a counterclaim in the first suit and could not be brought in a separate suit. *Id.* at 171.

In *Schneeberger v. Hoette Concrete Const. Co.,* 680 S.W.2d 301 (Mo.App.1984), a building contractor sued a homeowner for the balance allegedly due the contractor for building the home. The homeowner counterclaimed, alleging the contractor failed to complete the home in a workmanlike manner. The case proceeded to judgment, which became final. The homeowner then sued a subcontractor for alleged deficiencies in the foundation. The trial court granted summary judgment for the subcontractor on the ground that the homeowner's suit was a compulsory counterclaim in the earlier case and was thus barred by Rule 55.32(a). The Eastern District of this Court affirmed, pointing out that the absence of the subcontractor in the first suit was no reason to excuse the homeowner from the bar of Rule 55.32(a). *Id.* at 303. As the subcontractor was a necessary party to the full adjudication of the issues in the first suit, it was the homeowner's duty to request that the subcontractor be made a party. *Id.*

In the instant case Count II of the Shinns' petition makes no distinction between the alleged tortious conduct of Bank and the alleged tortious conduct of Bollinger. It ascribes the same conduct to each.

Additionally, it is evident the Circuit Court of Camden County could have acquired jurisdiction over Bank in the suit by Bollinger against the Shinns (CV186–561CC). The instant case, like CV186–561CC, was brought in the Circuit Court of Camden County and jurisdiction was acquired over both Bank and Bollinger.

We therefore hold Count II of the Shinns' petition in the instant case is barred by Rule 55.32(a) in that it was a compulsory counterclaim in CV186–561CC.

Failure to assert a compulsory counterclaim forever bars a claimant from having the claim heard. *State ex rel. Davis v. Moss,* 392 S.W.2d 260, 261[1] (Mo. banc 1965); *Knight v. M.H. Siegfried Real Estate, Inc.,* 647 S.W.2d 811, 813[1] (Mo.App. 1982). The Shinns' second point is denied.

The Shinns' third point asserts the trial court erred in holding Count II was barred by § 516.140. The Shinns insist § 516.120(4), RSMo 1986, the five-year statute of limitations, applies to Count II. We need not address this point, as we have held Count II is barred by Rule 55.32(a).

The Shinns' final point avers the trial court erred in dismissing Count II because a substantial question of fact exists as to when that cause of action accrued. Nowhere in the argument on this point do the Shinns assert the claim had not accrued by July 10, 1987, the date they served their answer in CV186–561CC. The criminal prosecutions were terminated more than seven months prior to that date. The fourth point is without merit.

Judgment affirmed.

MAUS, P.J., and PREWITT, J., concur.