

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| NICHOLAS DEMANULE DANIELS, | ) |
| | ) |
| Appellant, | ) |
| | ) WD82785 |
| v. | ) |
| | ) |
| | ) OPINION FILED: |
| | ) August 18, 2020 |
| OFFICER RYAN TERRANOVA, et al., | ) |
| | ) |
| Respondents. | ) |

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Kevin M.J. Crane, Judge**

**Before Division Four:** Karen King Mitchell, Presiding Judge, and
Thomas H. Newton and Anthony Rex Gabbert, Judges

Nicholas Daniels appeals the award of summary judgment to Columbia Police Officers

Ryan Terranova, Patrick Corcoran, and Clint Sinclair and former Columbia Police Sergeant Candy

Cornman (collectively, the Officers) on Daniels's claim of malicious prosecution stemming from

an underlying criminal prosecution for trespassing, assault of a law enforcement officer, and

resisting arrest. On appeal, Daniels raises seven points, arguing that the motion court erred in

granting summary judgment because (1) an earlier suit was commenced against Daniels in that

criminal charges were filed against him; (2) there are genuine issues of material fact as to whether

the Officers instigated the prosecution; (3) the case terminated in Daniels's favor in that the

prosecuting attorney dismissed the case by *nolle prosequi*, intended to abandon the case, and did not refile charges against Daniels before the statute of limitations expired; (4) there are genuine issues of material fact demonstrating that the Officers lacked probable cause to instigate the prosecution against Daniels for any criminal charges; (5) collateral estoppel does not bar Daniels from presenting evidence of lack of probable cause; (6) there are genuine issues of material fact regarding the Officers' malice; and (7) there are genuine issues of material fact regarding Daniels's damages. Because the motion court properly granted summary judgment as to Daniels's claim of malicious prosecution arising from the charge of resisting arrest and as to all of his claims against Sergeant Cornman, we affirm in part. But, because we find genuine issues of material fact as to (1) probable cause to prosecute Daniels for trespass and assault of a law enforcement officer and (2) whether the prosecutor abandoned the case, we reverse the grant of summary judgment as to Daniels's claims of malicious prosecution for trespass and assault of a law enforcement officer against the remaining Officers and remand the case for further proceedings consistent with this opinion.

## Background

Around midnight on October 23, 2013, several of the Officers were conducting a routine business check at the Fieldhouse, a bar in downtown Columbia, Missouri, when an altercation occurred between Daniels and Brock Gettemeier, a Fieldhouse bouncer. Daniels and the Officers disagree about how the altercation arose, developed, and progressed and as to whether Daniels acted aggressively. Some of the Officers responded to the altercation, and a fight broke out. During the fight, one of the Officers was struck in the face and responded by using his Taser on Daniels.

2

Daniels was arrested and, on November 14, 2013, he was charged by information with three offenses: (1) Class B misdemeanor of trespass in the first degree under § 569.140;[1] (2) Class A misdemeanor of assault of a law enforcement officer in the third degree under § 565.083; and (3) Class A misdemeanor of resisting arrest under § 575.150. On April 25, 2014, the assistant prosecuting attorney assigned to the case entered a *nolle prosequi*,[2] and a docket entry of the same date states, "Dismissed by Prosec/Nolle Pros."

Daniels subsequently filed a federal lawsuit in the U.S. District Court for the Western District of Missouri against the Officers, and others, asserting claims for violation of Daniels's constitutional rights in connection with his arrest. Daniels's federal complaint also asserted state-law claims for battery, conspiracy to commit battery, false imprisonment, malicious prosecution, and conspiracy to commit malicious prosecution. On October 26, 2016, the federal district court granted summary judgment in favor of all defendants on all of Daniels's federal claims, finding that probable cause existed for Daniels's arrest for resisting arrest under federal standards and, alternatively, that the Officers were entitled to qualified immunity and that the use of force was objectively reasonable. *Daniels v. City of Columbia, Mo.*, 2016 WL 6394496, at *5-12 (W.D. Mo. Oct. 26, 2016). The federal court declined to exercise supplemental jurisdiction over Daniels's state-law claims, instead dismissing them without prejudice. *Daniels*, 2016 WL 6394496, at *12.

Following dismissal of his federal lawsuit, Daniels filed the petition in the underlying action, asserting state-law claims for malicious prosecution, false imprisonment, battery, and negligent supervision. The Officers moved for summary judgment on all four claims, asserting

---

[1] All statutory references are to the Revised Statutes of Missouri (2013) unless otherwise noted.

[2] "A *nolle prosequi* is a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending criminal charge." *Doyle v. Crane*, 200 S.W.3d 581, 587 (Mo. App. W.D. 2006) (quoting *State v. Buchli*, 152 S.W.3d 289, 307 (Mo. App. W.D. 2004)).

collateral estoppel/issue preclusion, res judicata/claim preclusion, qualified immunity, official immunity, and failure to state a claim upon which relief may be granted. With respect to malicious prosecution, all of the Officers challenged two essential elements of Daniels's prima facie case— termination of the criminal prosecution in his favor and probable cause to initiate the prosecution. Sergeant Cornman also challenged the additional element that she did not instigate the prosecution of Daniels. Daniels responded to the Officers' statement of uncontroverted material facts that accompanied their motion, but Daniels did not file a contemporaneous legal memorandum opposing summary judgment. The Officers filed a reply in support of their motion, including responses to Daniels's statement of additional material facts; the Officers did not assert any new additional material facts in their reply. Daniels subsequently filed a sur-reply that, for the first time, raised legal arguments in opposition to the Officers' motion for summary judgment.

The court held a hearing on the Officers' motion. Following the hearing, the court granted summary judgment in the Officers' favor on all claims, but the court neither entered findings of fact and conclusions of law nor indicated the basis on which it granted the motion.[3]

## Preservation of Issues on Appeal

As a preliminary matter, the Officers assert that Daniels failed to preserve any issues for review on appeal because he did not file a legal memorandum in opposition to their motion for summary judgment, instead raising his legal arguments in opposition to the motion for the first time in his sur-reply. The Officers argue that Daniels's sur-reply was not allowed under Rule 74.04(c).[4] In pertinent part, Rule 74.04(c)(4) states:

> *Sur-replies in Opposition to Motions for Summary Judgment.* Within 15 days of service, if movant files a statement of additional material facts pursuant to Rule 74.04(c)(3), the adverse party shall file a sur-reply. The sur-reply shall set

---

[3] On appeal, Daniels challenges the grant of summary judgment on his malicious prosecution claim only. Thus, we do not address further his claims of false imprisonment, battery, and negligent supervision.

[4] All Rule references are to the Missouri Supreme Court Rules (2016) unless otherwise noted.

forth each additional statement of fact in its original paragraph number and immediately thereunder admit or deny each such factual statement. The sur-reply shall be in the form and shall be supported in the manner prescribed by Rule 74.04(c)(2).

Rule 74.04(c)(5) further states, "(5) *Additional papers*. No other papers with respect to the motion for summary judgment shall be filed without leave of court." Because Daniels did not seek leave to file his sur-reply, the Officers contend that no issues raised by Daniels for the first time in his sur-reply were preserved for appellate review.

In response, Daniels argues that, as the non-moving party, he is not required to file a legal memorandum in response to the summary judgment motion in order to preserve legal issues for appeal. In support of his argument, Daniels points to use of the permissive word "may" in the following sections of Rule 74.04(c)(2):

> Within 30 days after a motion for summary judgment is served, the adverse party shall serve a response on all parties. The response shall set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements.
> . . .
>
> The response *may* also set forth additional material facts that remain in dispute, which shall be presented in consecutively numbered paragraphs and supported in the manner prescribed by Rule 74.04(c)(1).
> . . .
>
> The response *may* include a legal memorandum explaining the legal or factual reasons why summary judgment should not be granted.

(Emphasis added.)

As the non-moving party, Daniels was required to serve a response setting forth each of the Officers' factual statements and admitting or denying the truth thereof, which Daniels did. Rule 74.04(c)(2). That rule permits, but does not require, the non-moving party to file a legal memorandum explaining the legal or factual reasons why summary judgment should be denied.

5

While Rule 74.04(c)(4) requires a non-moving party to file a sur-reply where the movant files a statement of additional material facts in its reply pursuant to Rule 74.04(c)(3), we do not read that rule to allow sur-replies *only* when the movant has filed a statement of additional facts. And we do not interpret Rule 74.04(c)(5)'s prohibition on submission of other papers without leave of court to pertain to sur-replies. "Rule [74.04(c)(5)] specifies that '[n]o other papers with respect to the motion for summary judgment [beyond the motion, response, reply, *and sur-reply*] shall be filed without leave of court.'" *Matysyuk v. Pantyuhkin*, 595 S.W.3d 543, 548 (Mo. App. W.D. 2020) (quoting Rule 74.04(c)(5)) (emphasis added).

Moreover, the Officers fail to cite a single case holding that the non-moving party in a summary judgment proceeding must file a legal memorandum to preserve issues for appeal. To the contrary, the Supreme Court of Missouri expressly held that the non-moving party is not required to offer legal arguments in opposition to a motion for summary judgment. *See ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381-82 (Mo. banc 1993) ("The non-movant never needs to establish a right to judgment as a matter of law; the non-movant need only show that there is a genuine dispute as to the facts underlying the *movant's* right to judgment.") (emphasis in original).

For these reasons, Daniels did not waive his legal arguments by raising them for the first time in his sur-reply to the Officers' motion for summary judgment.

Daniels has preserved the issues raised on appeal.

**Standard of Review**

"An appellate court's review of a motion for summary judgment is *de novo.*" *Copeland v. Wicks*, 468 S.W.3d 886, 889 (Mo. banc 2015). "Where the trial court does not specify its reasoning for granting a motion for summary judgment, we presume it acted according to grounds set forth

6

in the motion." *Impey v. Clithero*, 553 S.W.3d 344, 349 (Mo. App. W.D. 2018) (quoting *Romeo v. Jones*, 86 S.W.3d 428, 431 (Mo. App. E.D. 2002)). "However, we can affirm the judgment 'by any appropriate theory supported by the record.'" *Id.* (quoting *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 840 (Mo. App. S.D. 2015)).

"Summary judgment is appropriate when a moving party shows there are no genuine issues of material fact and the party is entitled to judgment as a matter of law." *Copeland*, 468 S.W.3d at 889. "The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support the claimed right to judgment." *Id.* A defendant who moves for summary judgment must demonstrate:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.

*Impey*, 553 S.W.3d at 349 (quoting *Clark v. Ruark*, 529 S.W.3d 878, 881-82 (Mo. App. W.D. 2017)). "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. "Once the [movant] has made such a showing, the burden shifts to the [non-moving party], who must demonstrate by affidavit, depositions, answers to interrogatories[,] or admissions on file that one or more of the material facts relied upon by the [moving] party is genuinely disputed."[5] *Impey*, 553 S.W.3d at 349 (quoting *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co.*, 931 S.W.2d 166, 178 (Mo. App. W.D. 1996)).

---

[5] "'When a motion for summary judgment is made and supported as provided in this Rule 74.04,' i.e., when the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response,* by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial.'" *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (quoting Rule 74.04(e) (emphasis in original)).

7

**Analysis**

To prevail on his claim for malicious prosecution, Daniels must prove:

> (1) the commencement or prosecution of the proceedings against [him]; (2) its legal causation or instigation by [the Officers]; (3) its termination in [Daniels's] favor; (4) the absence of probable cause for such proceedings; (5) the presence of malice therein; and (6) damages by reason thereof.

*Impey*, 553 S.W.3d at 352 (quoting *Impey v. Hart*, 471 S.W.3d 776, 778 (Mo. App. S.D. 2015)). "Malicious prosecution actions are not favored in the law as public policy supports uncovering and prosecuting crime." *Copeland*, 468 S.W.3d at 889. "As such, courts require strict compliance with the requisite elements." *Id.* "In other words, [the Officers] 'could establish a right to judgment as a matter of law by showing that [Daniels] would be unable to produce evidence sufficient to allow the trier of fact to find the existence of *any one* of the elements of malicious prosecution by strict and clear proof.'" *Impey*, 553 S.W.3d at 353 (quoting *Heberlie v. Harriman Oil*, 497 S.W.3d 886, 890 (Mo. App. E.D. 2016) (emphasis in original)).

On appeal, Daniels argues that the motion court erred in granting summary judgment against him on his malicious prosecution claim because genuine issues of material fact remain and the Officers failed to demonstrate their right to judgment as a matter of law. Specifically, Daniels contends that the motion court erred because (1) an earlier suit was commenced against him;[6] (2) there are genuine issues of material fact regarding each Officers' instigation of the prosecution;[7] (3) the case terminated in Daniels's favor in that the prosecuting attorney dismissed the case by *nolle prosequi*, intended to abandon the case, and did not refile charges against Daniels before the

---

[6] The parties agree that criminal charges were filed against Daniels in connection with the October 2013 incident at the Fieldhouse. Thus, we do not discuss Daniels's first point further.

[7] The Officers responded to Daniels's second point on appeal noting that, with the exception of Sergeant Cornman, the essential element of instigation of prosecution was **not** the subject of their motion for summary judgment, and therefore is not properly an issue on appeal. Earlier in their brief, the Officers made it clear that they "do not concede that the charges brought against Mr. Daniels were the result of all of the Officers' actions." [Respondents' Brief p. 44.]

8

statute of limitations expired; (4) there are genuine issues of material fact demonstrating that the Officers lacked probable cause to instigate the prosecution against Daniels for any criminal charges; (5) collateral estoppel does not bar Daniels from presenting evidence of lack of probable cause; (6) there are genuine disputes of material fact regarding the Officers' malice;[8] and (7) there are genuine issues of material fact regarding Daniels's damages.[9]

In moving for summary judgment, the Officers challenged two elements of Daniels's malicious prosecution claim. The Officers argued that (1) the prosecution did not terminate in Daniels's favor; and (2) they had probable cause to initiate the prosecution. Sergeant Cornman challenged the additional element that she did not instigate the prosecution. Although Daniels addresses all six elements of a malicious prosecution claim on appeal, only the claims raised by the Officers in their summary judgment motion are relevant to our analysis. Thus, because the Officers did not move for summary judgment on the remaining elements—commencement of the underlying proceeding; instigation of the prosecution by Officers Terranova, Corcoran, and Sinclair; malice; and damages—we do not address those issues here. Accordingly, the points to be addressed on appeal are Point II (instigation of the criminal prosecution as to Sergeant Cornman only), Point III (termination of the prosecution in Daniels's favor), Point IV (lack of probable cause), and Point V (collateral estoppel). For ease of discussion, we address these points out of order.

---

[8] The Officers do not dispute Daniels's sixth point on appeal because they did not raise lack of malice as a basis for summary judgment below. Thus, we do not discuss Daniels's sixth point further.

[9] Likewise, the Officers do not dispute Daniels's seventh point on appeal because they did not raise lack of damages as a basis for summary judgment below. Thus, we do not discuss Daniels's seventh point further.

**I.     There are genuine issues of material fact as to whether the criminal prosecution was terminated in Daniels's favor (Point III).**

To prevail on his claim for malicious prosecution, Daniels must prove the underlying criminal prosecution terminated in his favor; the Officers contend that the uncontroverted evidence demonstrates that it did not.

"For purposes of malicious prosecution, an underlying action is deemed terminated when: (1) a final judgment is entered on the merits; (2) the action is dismissed by the court *with prejudice;* or (3) the action is abandoned." *Doyle v. Crane*, 200 S.W.3d 581, 589 (Mo. App. W.D. 2006) (emphasis in original). Here, there was no final judgment on the merits of the criminal prosecution and the court did not dismiss the prosecution with prejudice, so the issue is whether the prosecution was abandoned. As the Officers were granted summary judgment, the question then is whether the uncontroverted facts entitle the Officers to judgment as a matter of law because the prosecution was not abandoned.

In *Doyle*, we addressed "whether the prosecutor's dismissal without prejudice [by *nolle prosequi*] of the underlying criminal cases against the plaintiffs 'terminated' the proceedings in the plaintiffs' favor." *Id.* at 589. There, we held, "termination does not result from a *nolle prosequi* entered in a criminal prosecution, for purposes of determining when a malicious prosecution claim accrues, unless there is an accompanying intent by the prosecutor to finally abandon the prosecution." *Id.* at 590; *see also Zahorsky v. Barr, Glynn and Morris, P.C.*, 693 S.W.2d 839, 842 (Mo. App. W.D. 1985) ("[D]ismissal without prejudice does not terminate the case in favor of the defendant absent proof that the dismissal is coupled with the intent of the plaintiff to abandon the claim."), *abrogated on other grounds by Ritterbusch v. Holt*, 789 S.W.2d 491, 494 (Mo. banc 1990). In *Doyle*, we concluded that such a requirement is "reasonable inasmuch as without such finality, the underlying criminal cases could have been re-filed at any time, provided the statute of

10

limitations as to the criminal cases had not expired." *Doyle*, 200 S.W.3d at 589. "Termination does not result from a *nolle prosequi* entered in a criminal prosecution, for purposes of determining when a malicious prosecution claim accrues, unless there is an accompanying intent by the prosecutor to finally abandon the prosecution." *Id.* at 590.

While a *nolle prosequi*, by itself, is not enough to find that the underlying criminal prosecution terminated in the defendant's favor, Daniels relies on additional uncontroverted facts to support a finding that the prosecutor intended to abandon Daniels's prosecution.

In his Statement of Additional Material Facts in response to the Officers' motion for summary judgment, Daniels asserted:

> ¶164.   On April 25, 2014 the Boone County Prosecuting Attorney's office dismissed the case against Mr. Daniels in full by entering a Nolle Prosequi for each charge filed against him.  (Id., 13BA-CR04177).

> ¶165.  At the time, the Boone County Prosecutor had no intent to refile charges against Mr. Daniels based on the information available.  See Exhibit 16 at page 11, lines 17 through 19.

> ¶166.  The statute of limitations has since run on Mr. Daniels on the charges filed against Mr. Daniels.  Section 556.036, RSMo; Exhibit 16, page 21, line 11 through 14.

In support of the allegation that the prosecutor had no intent to refile charges against him, Daniels cites to a portion of the transcript of the prosecutor's deposition:

> Q.  Would it have required new information for you to have done something different?  And let me clarify that.  That question may not be clear.
>
> For you to have gone back and refiled the case, would it have required an influx of some new information about the case?
>
> A.  I could have gone back and refiled it any time within the one-year statute of limitations.
>
> Q.  Sure.  And legally I understand that.  But today—and I know we're—[Officers' counsel] may as well, we're going to be asking questions about your intentions.  So was it your intent when you dismissed it, to take the case back up?

A. I wasn't planning on it, no.

The Officers acknowledge that at the time the *nolle prosequi* was entered the prosecutor had no plans to refile the charges. They also acknowledge that the statute of limitation ran without charges being refiled. In support of their motion for summary judgment, the Officers relied on portions of the prosecutor's testimony that addressed the possibility of refiling charges against Daniels:

> Q. Okay. And I take it from your answers to [Daniels's counsel] just a minute ago, there were no agreements about your dismissal by nolle prosse with [Daniels's counsel]. Correct? For example, if I refile, I'm going to pay the court costs because I dismissed by nolle prosse?
> . . . .
>
> A. Using that example, no, we didn't have any agreements.
>
> Q. Now I'm going to use the global question. Any agreement whatsoever with [Daniels's counsel] regarding the refiling or dismissal of this case when you nolle prossed it?
>
> A. No.
> . . . .
>
> Q. Okay. And as far as refiling the case, let's say—I know this didn't happen, but let's say Mr. Daniels allegedly committed some other offense at some later point within the statute of limitations on the misdemeanors he was charged with as a result of the incident of October 23rd, 2013. You could have refiled those charges. Correct?
>
> A. Correct.
>
> Q. Is that something you may have considered?
>
> A. Possibly.
>
> Q. And if some new information came forward in the case prior to the end of the statute of limitations running, you also may have refiled it. Correct?
>
> A. Correct.

Q. I think theoretically it is possible you could have refiled it for some other reason. Nothing would have stopped you. Correct?

. . . .

A. Correct.

The Officers argue that the uncontroverted facts support the grant of summary judgment in their favor for three reasons. First, they argue that in order to manifest an intent to abandon the prosecutor must take an affirmative action in addition to entering a *nolle prosequi*. They note that in her deposition the prosecutor testified that she entered into no agreement with Daniels. In addition, the Officers rely on *Shinn v. Bank of Crocker*, 803 S.W.2d 621 (Mo. App. S.D. 1990). In *Shinn*, the Southern District of this court found that the prosecutor manifested an intent to abandon the prosecution of the Shinns, even though the charges against them were dismissed without prejudice, because the record indicated an agreement whereby the plaintiffs would pay court costs and the prosecutor, in turn, would cease prosecuting the case. *Shinn*, 803 S.W.2d at 626. "Absent such an agreement there would have been no inducement for the [plaintiffs] to pay the costs," the court reasoned, and it is thus "inferable that the prosecutor specified the initial dismissals were without prejudice so he could refile the charges if the [plaintiffs] reneged." *Id*. After the costs were paid, additional docket entries were made indicating that the cases were dismissed, but those entries did not specify that they were without prejudice, suggesting that the prosecutor intended to dismiss the cases with prejudice once the plaintiffs paid the costs. *Id.* at 626-27.

Although in *Shinn* there was an affirmative act by the prosecutor in the form of an agreement to dismiss the charges upon payment of costs by the defendants and a subsequent dismissal, we reject the suggestion that such an affirmative action by the prosecutor will always be necessary to demonstrate an "intent by the prosecutor to finally abandon the prosecution."

13

*Doyle*, 200 S.W.3d at 590. Often, intent must be proved by inference from surrounding facts. *Wallace v. State*, 573 S.W.3d 136, 146 (Mo. App. E.D. 2019). Therefore, in determining the intent of the prosecutor to abandon a prosecution, we will consider reasonable inferences from surrounding circumstances.

Next, the Officers argue that the running of the statute of limitations after the entry of the *nolle prosequi* is not relevant to the determination of the prosecutor's intent to abandon. During oral argument, Officers' counsel argued that *Doyle* presented the same situation—dismissal by *nolle prosequi* and expiration of limitations period on the underlying misdemeanor charge before the malicious prosecution claim was filed—yet the *Doyle* court did not find termination of the prosecution in the defendant's favor. While counsel's description of the underlying facts in *Doyle* is accurate, the procedural posture of *Doyle* differs from the present case in significant ways. *Doyle* involved a motion to dismiss for expiration of the statute of limitations on the malicious prosecution claim, so the court was limited to an evaluation of the claimant's petition. *Doyle*, 200 S.W.3d at 589. The only allegations regarding termination in Doyle's petition related to the *nolle prosequi* and the allegation that the case "terminated" in her favor. Based on those allegations, we concluded that "there is nothing [in the petition] from which to infer an intent by the state, in the underlying criminal case against [Doyle], to finally abandon the criminal charge against her." *Id*. "As to the appellant's allegation that the criminal prosecution was 'terminated' in her favor, that is nothing more than a legal conclusion that does not pass muster as to pleading requirements in this state." *Id.* at 590. Therefore, *Doyle* provides no guidance as to the relevance of the prosecution allowing the statute of limitations to run after the entry of a *nolle prosequi* on the question of the intent to abandon. We hold that the running of the statute of limitation following the entry of a

14

*nolle prosequi*, while not determinative, is a factor that may be considered in determining whether the prosecutor intended to abandon the prosecution.

Finally, the Officers argue that the prosecutor's deposition testimony supports the grant of summary judgment because she testified that she could have refiled charges prior to the running of the statute of limitation and that she might have done so had Daniels committed another offense or had additional evidence supporting prosecution come to light regarding the underlying charges. The key issue is the prosecutor's intent. On direct examination, she indicated that, at the time she entered the *nolle prosequi*, she did not plan to refile the charges. While she acknowledged that she could have refiled the charges until the statute of limitations ran and may have done so if new information had been discovered, there is no indication in the record that any further investigation occurred, and, of course, the statute of limitations did run. The prosecutor's intent is a fact issue, which the parties dispute, and there is testimony to support both interpretations. To affirm summary judgment on this point, we would have to conclude that the uncontroverted facts—at the time the prosecutor entered the *nolle prosequi* she had no plans to refile the charges, she would have refiled charges only if circumstances changed, and she allowed the statute of limitations to run without refiling charges—bar a finding of intent to abandon. Because there is a genuine issue of material fact as to whether the prosecutor intended to abandon the charges against Daniels, we grant Point III in Daniels's favor.

**II.     There are genuine issues of material fact as to whether probable cause existed to initiate Daniels's prosecution for trespass and assault of a law enforcement officer (Points IV and V).**

To prevail on his claim for malicious prosecution, Daniels also must prove that the Officers lacked probable cause to initiate the prosecution against him. Two of Daniels's points on appeal relate to probable cause. In his fourth point, Daniels claims that the motion court erred in granting

summary judgment because there are genuine issues of material fact demonstrating that the Officers lacked probable cause to instigate the prosecution. As for his fifth point, Daniels asserts that the court erred in granting summary judgment because collateral estoppel does not bar him from presenting evidence of lack of probable cause. Because these points are related, we discuss them together, beginning with Point V.

"Collateral estoppel precludes the same parties (or those in privity with them) from relitigating an issue that was previously adjudicated." *U-Haul Co. of Mo. v. Carter*, 567 S.W.3d 680, 684 (Mo. App. W.D. 2019).

> Before a prior adjudication can be given preclusive effect, four elements must be shown: (1) the issue decided in the prior action was identical to the issue presented in the later action; (2) the prior action resulted in a judgment on the merits; (3) the party against whom estoppel is asserted was a party or was in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Id.*[10] "All elements must be established before collateral estoppel applies." *Id.*

"[C]ollateral estoppel applies to facts, not to legal reasoning . . . ." *Goldsby v. Lombardi*, 559 S.W.3d 878, 887 (Mo. banc 2018) (citing *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo. banc 1984) ("The nature of collateral estoppel is such that a fact appropriately determined in one lawsuit is given effect in another case involving different issues.")); *see State ex rel. Greitens v. Am. Tobacco Co.*, 509 S.W.3d 726, 734 (Mo. banc 2017) ("Under collateral estoppel, also known as issue preclusion, a court's decision about an issue of fact or law that is necessary to the court's judgment may preclude relitigation of that issue about a different cause of action involving a party to the

---

[10] The Eighth Circuit and U.S. District Court for the Western District of Missouri use a similar four-point test for determining whether collateral estoppel is appropriate: (1) Is the issue identical to one in a prior adjudication? (2) Was there a final judgment on the merits? (3) Was the estopped party a party or in privity with a party to the prior adjudication? (4) Was the estopped party given a full and fair opportunity to be heard on the adjudicated issue?

*Vigilant Ins. Co. v. Behrenhausen*, 889 F. Supp. 1130, 1134 (W.D. Mo. 1995).

first case."); *Carter v. Treasurer of State-Custodian of Second Injury Fund*, 532 S.W.3d 203, 209 (Mo. App. W.D. 2017) ("Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue that was necessary and unambiguously already decided in a different cause of action." (quoting *Kesler v. Curators of the Univ. of Mo.*, 516 S.W.3d 884, 896 (Mo. App. W.D. 2017)).

In resolving Daniels's federal claims, where one of the legal issues was whether the Officers had probable cause to arrest Daniels,[11] the district court made the following factual findings:

1. Officers Terranova and Corcoran "then saw Brock Gettemeier, the Fieldhouse bouncer, having a physical confrontation with Daniels. Corcoran and Terranova moved toward them shouting, 'Hey! Police, police, police!'" *Daniels*, 2016 WL 6394496, at *2.

2. "During the altercation, Daniels heard officers yell, 'Freeze' and 'Get down.' Corcoran ordered Daniels to get on the ground, but he did not get on the ground." *Id.*

3. "Corcoran then pulled Daniels'[s] left arm slightly down, but Daniels forced it back up level with his head and again spread his fingers to display his palm. . . . With Corcoran still on Daniels'[s] left side as he was pulling down Daniels'[s] left arm, [Officer] German faced Daniels and yelled in his face, 'Put your hands behind your back! Put your hands behind your back!' Daniels'[s] arms remained raised above his head." *Id.* at *3.

4. "During this time, Corcoran and Terranova punched Daniels several times, struck him in the knee, and attempted to sweep his legs out from under him; Daniels did not get on the ground or put his arms behind his back." *Id.*

_____

[11] We recognize that probable cause to arrest and probable cause to prosecute are different standards. In Daniels's federal case, the court held that "[p]robable cause [to arrest] exists if the totality of the facts and circumstances known to the officer *at the time of the arrest* would warrant a reasonable, prudent person to believe that the arrestee had committed or was committing a crime." *Daniels v. City of Columbia, Mo.*, 2016 WL 6394496, at *5 (W.D. Mo. Oct. 26, 2016). (Emphasis added.) In contrast, "[p]robable cause [to prosecute] is reasonable cause and may be defined as the existence of such a state of facts as would warrant an ordinarily cautious and prudent [person] in the belief that the accused was guilty of the offense charged." *Higgins v. Knickmeyer-Fleer Realty & Inv. Co.*, 74 S.W.2d 805, 813 (Mo. 1934). "And 'the test as to whether or not probable cause for instituting a criminal prosecution existed is to be applied to the facts and circumstances as they existed at the time the prosecution was commenced.'" *Id.* (quoting Newell on Malicious Prosecution, p. 252; 38 C. J. p. 405). Thus, this opinion should not be interpreted to mean that a finding of probable cause to arrest in one case necessarily collaterally estops a party from arguing lack of probable cause to prosecute in a subsequent case.

5. "At the same time that German reached the altercation and ordered Daniels to put his hands behind his back, Sinclair reached the altercation coming up right behind her. Upon reaching the group, Sinclair grabbed Gettemeier and pulled him away from the altercation, yelling, 'Get back, get back, get back!' at Gettemeier. Immediately after, as Sinclair turned back toward Daniels and the other officers, Sinclair was punched in the face. Sinclair perceived that he was punched by Daniels, but Daniels did not punch him." *Id.*

6. "Shortly thereafter, Daniels broke away from the altercation with his hands at his sides. As Daniels began walking away from the officers, Terranova put his hands on Daniels'[s] shoulders. Sinclair then raised his Taser, and shouted 'Taser, Taser, Taser!' As Terranova released his grip on Daniels, Sinclair's Taser fired once into Daniels'[s] back. As the Taser fired, Corcoran pulled Daniels'[s] legs out from under him, and Daniels fell to the ground." *Id.*

7. "Once Daniels was on the floor, he rolled over onto his back and did not comply with the officers' orders to roll onto his stomach. At first Terranova and Corcoran were unable to turn Daniels onto his stomach to handcuff him." *Id.*

8. "Each officer perceived that Daniels flexed his muscles and physically resisted their efforts during the encounter."[12] *Id.* at *3, n.7.

9. "The Officers were dressed in uniform, and they announced their presence to Daniels and Gettemeier multiple times. Daniels admitted that he knew the Officers were police during the incident, and it was not unreasonable for the Officers to believe Daniels was aware of their status." *Id.* at *6.

These facts were appropriately determined in Daniels's federal lawsuit and, thus, should be given effect in the present case although it involves different, albeit related, issues. These facts satisfy the four elements of collateral estoppel: (1) the facts decided by the federal court are identical to the factual issues presented in the current case; (2) the federal case resulted in a judgment on the merits;[13] (3) Daniels was a party in the federal action; and (4) Daniels had a full

---

[12] "Daniels testified that he was unsure whether he maintained tension in his arms the entire time the officers had contact with him." *Daniels v. City of Columbia, Mo.*, 2016 WL 6394496, at *3 n.7 (W.D. Mo. Oct. 26, 2016). The court noted that "equivocal statements do not create disputed facts." *Id.* (citing *Bosley v. Cargill Meat Sols. Corp.*, 705 F.3d 777, 782 (8th Cir. 2013) ("An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur.") (internal quotations omitted)).

[13] Summary judgment is a final judgment on the merits. *State ex rel. City of Blue Springs, Mo. v. Schieber*, 343 S.W.3d 686, 689 (Mo. App. W.D. 2011).

and fair opportunity to litigate these issues in the prior case. Thus, these facts, as found by the federal district court, are entitled to preclusive effect in this case.

Point V is denied.

The question then becomes whether these undisputed facts entitle the Officers to summary judgment on the issue of probable cause to initiate the prosecution. Daniels raises this issue from a slightly different perspective in his fourth point, wherein he claims that there are genuine issues of material fact demonstrating that the Officers lacked probable cause to instigate the prosecution.

"Probable cause [to prosecute] is reasonable cause and may be defined as the existence of such a state of facts as would warrant an ordinarily cautious and prudent [person] in the belief that the accused was guilty of the offense charged." *Higgins v. Knickmeyer-Fleer Realty & Inv. Co.*, 74 S.W.2d 805, 813 (Mo. 1934). Here, one of the offenses charged was resisting arrest. In pertinent part, § 575.150.1 provides,

> A person commits the crime of resisting . . . arrest . . . if, knowing that a law enforcement officer is making an arrest . . . or the person reasonably should know that a law enforcement officer is making an arrest . . . for the purpose of preventing the officer from effecting the arrest . . . the person: (1) [r]esists the arrest . . . of such person by using or threatening the use of violence or physical force or by fleeing from such officer.

The facts found by the federal district court and given preclusive effect in the present case show that the Officers were in uniform, they announced their presence several times, and Daniels knew they were police officers. Despite repeated commands from several of the Officers to put his hands behind his back and get down on the ground, Daniels did neither. Initial attempts by the Officers to physically force Daniels to comply with the commands were unsuccessful. At one point, Daniels broke away from the altercation and began walking away from the Officers with his hands at his sides. When Daniels fell to the floor after being hit by Officer Sinclair's Taser, Daniels rolled over onto his back and did not comply with the Officers' orders to roll onto his stomach so

19

they could handcuff him. And each Officer perceived that Daniels flexed his muscles and physically resisted their efforts during the encounter. Together, these facts "would warrant an ordinarily cautious and prudent [person] in the belief that [Daniels] was guilty of" resisting arrest. *Higgins*, 74 S.W.2d at 813. Thus, we find that there was probable cause at the time the prosecution commenced to find that Daniels committed the offense of resisting arrest.

Daniels argues that a finding of probable cause to prosecute him on one of the three charges filed—here resisting arrest—does not preclude his malicious prosecution claim on the other two charges—trespass and assault of a law enforcement officer. We agree.

No Missouri court has addressed the issue of whether probable cause to prosecute one of multiple criminal charges precludes a malicious prosecution claim as to other charges.[14] However, in *Ciesla v. Christian*, Case No. 1:14CV000165 ACL, 2016 WL 1245197, at *5 (E.D. Mo. Mar. 30, 2016), the federal court, applying Missouri law, held that probable cause supporting a criminal charge for one crime forecloses a state-law malicious prosecution claim as to other charges. The court stated,

> Under Missouri law, an "underlying proceeding gives rise to, at most, only one claim for "malicious prosecution." *Joseph H. Held & Assoc., Inc. v. Wolff*, 39 S.W.3d 59, 62-63 (Mo. Ct. App. 2001). "To allow a party to separate the unsuccessful claims from the successful claims in the underlying proceeding and bring a malicious prosecution action on the unsuccessful ones 'would invite a multitude of unwarranted litigation arising from situations where a proceeding is instituted on the basis of inconsistent theories or where theories are abandoned during the proceeding, and where the proceeding is terminated adversely to the plaintiff.'" *Id.* at 63 (quoting *Zahorsky v. Griffin, Dysart, Taylor, Penner and Lay, P.C.*, 690 S.W.2d 144, 150-51 (Mo. Ct. App. 1985)). In this case, Plaintiff was charged with two counts arising from the same incident, and pled guilty to one of

---

[14] We have addressed this issue in the civil context. In *Teefey v. Cleaves*, 73 S.W.3d 813 (Mo. App. W.D. 2002), this court held, "The underlying proceeding gives rise to, at most, only one claim for malicious prosecution." *Id.* at 817 (quoting *Joseph H. Held and Assocs., Inc. v. Wolff*, 39 S.W.3d 59, 63 (Mo. App. E.D. 2001)). "Separate counts in an underlying petition do not support separate actions for malicious prosecution." *Id.*; *see also* C.J.S. Malicious Prosecution Section 68 ("Even though multiple charges are nolle prossed, a malicious prosecution action is precluded if the defendant is convicted on a single charge.").

20

the charges. Plaintiff cannot separate those counts and pursue a malicious prosecution claim with regard to the count on which he claims he was successful.

*See also Murray v. Lene*, No. 2:07CV00033 ERW, 2008 WL 5070048, at *5 n.3, *9 (E.D. Mo. Nov. 21, 2008) (For purposes of a malicious prosecution claim under Missouri law, "[i]t is enough that there was probable cause to believe that Plaintiff committed *any* offense, not just the one with which he was ultimately charged."). "But federal case law interpreting a Missouri [law] is not binding on this court's interpretation of that [law]." *Baker v. Century Fin. Grp., Inc.*, 554 S.W.3d 426, 436 (Mo. App. W.D. 2018). And, on this issue, we disagree with the federal courts, finding instead that the existence of probable cause to prosecute one criminal offense does not preclude a claim of malicious prosecution for other charged offenses.

First, we agree with Daniels that extending the civil rule that an underlying proceeding gives rise to only one malicious prosecution claim to cases where the underlying proceeding is criminal would violate public policy. Suspects could be charged with multiple offenses and be unable to assert a claim of malicious prosecution, so long as there is probable cause to prosecute on one of the offenses charged.

Second, the majority of other courts that have addressed this issue have required probable cause for all offenses charged before denying a claim for malicious prosecution for lack of probable cause. *See, e.g., Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) (For the existence of probable cause to be a complete defense to a malicious prosecution claim under New York law, the defendant must have had probable cause for each offense charged.); *Harrington v. Wilbur*, 743 F. Supp. 2d 1006, 1011 (S.D. Iowa 2010), *rev'd on other grounds*, 678 F.3d 676 (8th Cir. 2012) ("[T]he notion that *any* probable cause will suffice to defeat a malicious prosecution claim is at odds with Iowa malicious prosecution law."); *Bertram v. Viglas*, Civil No. 19-11298-LTS, 2020 WL 1892187, at *6-7 (D. Mass. April 16, 2020) (adopting "the majority,

21

charge-specific approach" to analyzing Bertram's § 1983 claim and his claim for malicious prosecution under Massachusetts law, but finding probable cause for each charged offense). The *Bertram* court relied in part on decisions from the United States Courts of Appeals for the Second, Third, and Seventh Circuits. *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (holding that a malicious prosecution claim can proceed even when a separate charge is supported by probable cause, noting that otherwise "an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses"); *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) ("[A] defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified."); *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge.").[15]

For the public policy reason discussed above, we adopt the charge-specific approach to the probable cause element of a malicious prosecution claim premised on an underlying criminal proceeding involving multiple, unrelated charges arising from the same incident or set of facts. Our adoption of this approach should not be interpreted to mean that, in every instance where there is probable cause with respect to some but not all offenses charged, the defendants will be liable

---

[15] The Court of Appeals for the Sixth Circuit recently held that, in the context of a § 1983 malicious prosecution claim, where "there was probable cause for [one] charge [in a multi-charge criminal complaint], the [plaintiff could not] move forward with any of his [§ 1983] malicious-prosecution claims." *Howse v. Hodous*, 953 F.3d 402, 408 (6th Cir. 2020) (emphasis in original). The Sixth Circuit reasoned that, because federal "malicious-prosecution claims are based on the Fourth Amendment" and "hinge on an alleged unreasonable seizure," such claims "fail[] so long as there's just one valid reason" for the alleged "unreasonable prosecutorial seizure" that triggered the purported malicious prosecution. *Id.* at 408-09 (quoting *Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010)).

for malicious prosecution. For liability to exist, all elements of malicious prosecution must be present, specific to the offense that is the subject of the malicious prosecution claim. Here, the Officers did not challenge the essential elements of instigation as to Officers Terranova, Corcoran, and Sinclair; malice; and damages, so we do not take a position on those elements. Moreover, when seeking summary judgment, the Officers likely did not anticipate our adoption of the charge-specific approach to the probable cause element of a malicious prosecution claim, which will require a sharper focus on whether the essential elements of a malicious prosecution claim can be established as to each of several charged offenses.

With respect to the trespass charge, there are genuine issues of material fact as to whether the Officers had probable cause to initiate prosecution against Daniels. The information asserted that Daniels "knowingly remained unlawfully" in the Fieldhouse. "A person commits the crime of trespass in the first degree if he . . . knowingly remains unlawfully in a building." § 569.140.1. "A person does not commit the crime of trespass in the first degree by . . . remaining upon real property unless . . . notice against trespass is given by . . . [a]ctual communication to the actor." *State v. Girardier*, 484 S.W.3d 356, 360 (Mo. App. E.D. 2015) (citing § 569.140.2).

It is unclear from the record whether there was reasonable cause to believe that notice of trespass was actually communicated to Daniels. Daniels testified that Gettemeier told him, "If I don't like the way that I'm being touched, that I can leave." Daniels also testified that Gettemeier grabbed his shirt and told Daniels that he was "done." Gettemeier testified as follows:

> Q: Did—after what you did—well, did you ever say anything to Mr. Daniels such as you are out of here?
> . . . .
>
> A: Yeah. I was cut off when he grabbed me by the throat. I said, "I work here. Those are police," and I don't know how much of the rest got out because he had me by the throat.

23

Officers Terranova, Corcoran, and German did not hear Gettemeier issue a trespass notice to Daniels. Officer Sinclair testified that he heard Gettemeier give a trespass notice to Daniels as Officer Sinclair was separating Gettemeier and Daniels but not before the altercation between those two began. Once the altercation began, Daniels may not have had a meaningful opportunity to leave the Fieldhouse; in other words, the trespass notice that Officer Sinclair heard may have come too late for Daniels to have acted on it. Given these factual disputes, the Officers are not entitled to summary judgment on the issue of probable cause to prosecute Daniels for trespass.

As to the charge of assault of a law enforcement officer, there are genuine issue of material fact as to whether the officers had probable cause to prosecute. The information asserted that Daniels "knowingly caused physical contact with [Officer Sinclair] without [his] consent . . . , by striking him in the face with a closed fist."[16] "A person commits the crime of assault of a law enforcement officer, . . . in the first degree if: . . . [s]uch person knowingly causes or attempts to cause physical contact with a law enforcement officer . . . without the consent of the law enforcement officer." § 565.083.1(3).

While the Officers were attempting to gain control of Daniels, Officer Sinclair was punched in the face; at the time, Officer Sinclair perceived that the punch came from Daniels. *Daniels*, 2016 WL 6394496, at *3. But Officer Sinclair provided no facts to support this perception and the federal district court found, and the Officers acknowledge, that this initial perception turned out to be false. *Id.*

"Probable cause [to prosecute] is reasonable cause and may be defined as the existence of such a state of facts as would warrant an ordinarily cautious and prudent [person] in the belief that the accused was guilty of the offense charged." *Higgins*, 74 S.W.2d at 813. "'[T]he test as to

---

[16] The Officers also claim that Daniels grabbed Officer Sinclair's lapel, but because that allegation is not part of the information, the charge of assault of a law enforcement officer was not based on that allegation.

24

whether or not probable cause for instituting a criminal prosecution existed is to be applied to the facts and circumstances as they existed at the time the prosecution was commenced.'" *Id.* (quoting Newell on Malicious Prosecution, p. 252; 38 C. J. p. 405). To support their motion for summary judgment, the Officers needed to come forward with facts sufficient to meet this standard. Here, where the Officers provided evidence only that Officer Sinclair "perceived" he was punched by Daniels, and that perception is acknowledged to be false, the Officers did not meet their burden to show that an ordinarily cautious and prudent person would believe that Daniels was guilty of assaulting a police officer. Because the Officers failed to demonstrate probable cause to believe Daniels punched Officer Sinclair, they are not entitled to summary judgment on the issue of probable cause to prosecute Daniels for assault of a law enforcement officer.[17]

Accordingly, Point IV is granted as to Daniels's claim of malicious prosecution for trespass and assault of a law enforcement officer; Point IV is denied as to Daniels's claim of malicious prosecution for resisting arrest.

### III. There are no genuine issues of material fact as to whether Sergeant Cornman instigated the criminal prosecution against Daniels, and Sergeant Cornman is entitled to judgment as a matter of law (Point II).

To prevail on his claim for malicious prosecution, Daniels must prove that the Officers legally caused or instigated the underlying criminal prosecution against him. *Impey*, 553 S.W.3d at 352. For his second point, Daniels asserts that the motion court erred in granting summary judgment against him because there are genuine issues of material fact as to whether the Officers

---

[17] Daniels argues that video from the Officers' body cameras showed that Daniels did not punch Officer Sinclair and that the Officers should have reviewed the video before initiating the prosecution. The Officers respond that it became apparent that Daniels did not punch Officer Sinclair only after they viewed the body camera footage frame-by-frame during their respective depositions in connection with Daniels's federal lawsuit and that they had no obligation to view the footage earlier. As noted above, the standard for determining probable cause to prosecute requires a review of the facts and circumstances as they existed at the time the prosecution was commenced. *Higgins*, 74 S.W.2d at 813 (quoting Newell on Malicious Prosecution, p. 252; 38 C. J. p. 405). We reject the notion that, as a general rule, supporting documentation must be reviewed to determine whether probable cause to prosecute exists.

instigated the prosecution. However, when they moved for summary judgment below, the Officers challenged only Daniels's ability to establish the essential element of instigation of prosecution with respect to Sergeant Cornman. Thus, we address Daniels's second point with respect to Sergeant Cornman only, and, as previously noted, do not address whether Daniels can establish that the other Officers instigated Daniels's prosecution as to each offense charged.

> To render one liable for malicious prosecution begun by another it must appear that he was the proximate and efficient cause of putting the law in motion. There must be proof of some affirmative act in connection with the prosecution . . . . The fact that one urges the institution of proceedings is insufficient to render him liable if the prosecuting witness was not influenced by such promptings. Mere passive knowledge of or acquiescence in the acts of another is not sufficient.

*Palermo v. Cottom*, 525 S.W.2d 758, 764 (Mo. App. 1975), *disavowed on other grounds by Sanders v. Daniels Int'l Corp*., 682 S.W.2d 803, 813-14 (Mo. banc 1984).

With respect to Sergeant Cornman, supervisor of the Columbia Police Department's downtown unit, the parties agree that: (1) she did not witness the October 23, 2013 incident at the Fieldhouse; (2) she did not execute the probable cause statement; (3) she performed a use-of-force investigation and generated a written report, which was forwarded to the prosecutor's office as part of the police records of the incident; (4) her report stated that it was "completed for a use[-]of[-]force investigation only, and d[id] not pertain to the criminal investigation"; (5) she conducted a videotaped interview of Daniels as part of her use-of-force investigation; and (6) she did not issue a *Miranda* warning to Daniels before interviewing him in connection with her use-of-force investigation.

In moving for summary judgment, the Officers argued that Sergeant Cornman's involvement did not rise to the level of instigating the criminal prosecution for purposes of triggering liability for malicious prosecution. Daniels countered that: (1) Sergeant Cornman's report was intended to be used in the criminal prosecution because it was forwarded to the

26

prosecutor's office; (2) her report misrepresented video from the Officers' body cameras depicting the incident at the Fieldhouse; and (3) she conducted her interview of Daniels in the presence of Officer Terranova, the charging officer.[18]

Based on the record before us, we find that there is no genuine issue of material fact regarding the extent of Sergeant Cornman's role in Daniels's criminal prosecution and that, as a matter of law, she was not the proximate and efficient cause of the prosecution. *Palermo*, 525 S.W.2d at 764.

Point II is denied with respect to Sergeant Cornman.

### Conclusion

Because the motion court properly granted summary judgment as to Daniels's claim of malicious prosecution arising from the charge of resisting arrest and as to all of his claims against Sergeant Cornman, we affirm in part. But, because we find genuine issues of material fact as to probable cause to prosecute Daniels for trespass and assault on a law enforcement officer and as to whether the prosecutor abandoned the case, we reverse the grant of summary judgment as to Daniels's claims of malicious prosecution for trespass and assault of a law enforcement officer against the remaining Officers and remand the case for further proceedings consistent with this opinion.

_____
Karen King Mitchell, Presiding Judge

Thomas H. Newton and Anthony Rex Gabbert, Judges, concur.

_____

[18] In his opening brief, Daniels also argues that Sergeant Cornman instigated the criminal prosecution by (1) signing off on every report and probable cause statement submitted to the prosecutor's office; and (2) locating and copying all videos of the October 23, 2013 incident at the Fieldhouse onto a disk, which she then placed in evidence. But Daniels did not include these factual allegations in his response to the Officers' statement of uncontroverted facts or in his statement of additional material facts. Because "[f]acts come into a summary judgment record only via Rule 74.04(c)'s numbered-paragraphs-and-responses framework," *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. S.D. 2016), we do not consider these factual allegations in our analysis of Point II.